In the Matter of the Application of SAMUEL KATZ for Permission to Remove the Body of ANNA KATZ, Deceased.

Supreme Court, Special Term, Queens County, April 1, 1938.

*Irvin J. Goldsmith,* for the petitioner.

*Isidore Drimmer,* for the respondent.

DALY, J. This is an application by a husband to disinter the body of his wife who is buried at Mt. Zion Cemetery in a plot owned by the Independent Serether Sick & Benevolent Society (hereafter referred to as the " society ") in order that she may be reinterred in another cemetery in which her son has purchased a family plot.

Decedent was a member of the society, and, by reason of such membership, entitled to a free burial and grave. The fact that the society was organized under the Membership Corporations Law and neither conducts religous services nor is connected with any synagogue, has no bearing upon the principles upon which this application must be weighed, for the all-important factor is that the ground in which decedent is now buried is consecrated in accordance with Jewish law.

It appears that in October, 1937, the decedent expressed a desire to be buried, when her time came, in a plot in which the entire family could be buried, as well as her sister, Mrs. Frieda Barney, to whom she was closely attached. Pursuant to a discussion concerning such a plot, one of the sons of the decedent — Alex Katz — negotiated with Jerome Weil, a trustee of Mt. Lebanon Cemetery, in Woodbridge, N. J., who, by letter dated November 11, 1937, notified him that an option, expiring on December 31, 1937, to purchase the plots which Mr. Katz had in mind, was held by another party, and that, in the event said option was not exercised, he would be glad to sell the plots to Mr. Katz.

Thereafter, on the 6th day of December, 1937, Mrs. Katz died, leaving her surviving her husband, the petitioner herein, and two sons, both of whom join in this application. She was buried in the grounds of the society in accordance with its by-laws, pursuant to which free burial is granted to its members.

On or about December 20, 1937, Mr. Weil, the trustee of Mt. Lebanon Cemetery, notified Alex Katz that the holder of the option was still uncertain about exercising it. Mr. Katz then made inquiries of the society with respect to purchasing a family plot upon its grounds. No reply to this letter was ever received, and on January 3, 1938, a written contract for the purchase of the family plot from the Mt. Lebanon Cemetery was entered into. Thereafter a request was made of the society and the cemetery authorities for permission to disinter the body of the decedent, in order to reinter her in the said family plot. The Mt. Zion Cemetery authorities granted such permission, but the society refused.

The numerous affidavits submitted on this application contain many matters which seem extraneous to the issue. However, from the last replying affidavit of the society, it appears that its

objections are predicated principally upon the ground that disinterment from holy consecrated ground contravenes the tenets of Orthodox Jewry, and that disinterment would be permitted only on condition that a satisfactory written opinion from an Orthodox Jewish rabbi be submitted.

It is conceded that both cemeteries are consecrated Jewish cemeteries; that no relatives of the decedent are buried in the plot from which her removal is sought; and that in the newly-purchased family plot, she would be the first to be there interred.

It is the contention of the petitioner that under the circumstances present herein, the disinterment of Mrs. Katz will not contravene the tenets of the Jewish faith because:

(1) The deceased had expressed a desire in her lifetime to be buried in the family plot; and

(2) It is intended to bury the deceased in such a family plot.

In support of these contentions the petitioner has submitted a duly authenticated translation of the opinion of Rabbi Louis Seltzer, secretary of the Union of Orthodox Rabbis of the United States and Canada, who based his opinion upon the petition herein, the affidavits of Alex Katz, Harry Katz and Frieda Barney, attached to the petition, all sworn to February 22, 1938, and the affidavits in opposition of Joseph Roth and Marcus Gelber, both sworn to March 5, 1938. His opinion is as follows:

"With regard to the question of removing the body of the deceased Mrs. Anna Katz from her grave in the cemetery to a new grave in a family plot, about which her husband and family have started negotiations when she was living, but because of certain delays the transaction has not been executed, and in the meantime the above mentioned woman passed away. The family is now asking whether the law against disinterring a body does or does not apply in this case.

"In answer, it is my opinion, that the fact that the family had been negotiating about the purchase of a plot when the woman was living, proves that she was buried with the intention of later removing her body, and, we can assume that as is customary, she considered it suitable to rest among her family — therefore, in this particular case, there is no prohibition of removing the body from its grave, as is explained in the Schulchan Aruch, Yoreh Deiah, par. 363, and also because of the short time that has passed since her death, and because of her lying in a coffin. In view of all this, the heirs of the said woman are permitted, according to law (Jewish), to remove her body to their family plot, and they cannot be prevented from doing it."

From the above it appears clear that the body of the decedent may be removed in accordance with the tenets of the Jewish faith, because " she was buried with the intention of later removing her body." (See, also, *Cohen* v. *Congregation Shearith Israel*, 114 App. Div. 117, 119; affd., 189 N. Y. 528.)

The Schulchan Aruch, referred to in the above-quoted opinion, is the basic code of Jewish law. Yoreh Deiah (¶ 363), literally translated, provides as follows: " We are not permitted to move either a corpse or bones from an honorable grave to an honorable grave, nor from a contemptible grave to a contemptible grave, nor from an honorable grave to a contemptible grave, and, it is not necessary to say, from an honorable grave to a contemptible grave, but in the midst of his own it is permitted even from an honorable grave to a contemptible, for it is pleasant for a man to rest alongside of his fathers. Likewise it is permitted (to move him) for the purpose of reinterring him in the Holy Land. If the body was placed there on the condition that it may be moved, it is permitted in any event; and, it is (also permitted) if it is not safe in that particular grave because of the fear that idolators may take out the body or that water may gather in the grave, or if, the body is buried in a found (mistaken) grave, it may be removed."

It is stated in an abridged English translation of the " Code of Jewish Law (Kitzur Schulchan Aruch), a Compilation of Jewish Laws and Customs," by Rabbi Solomon Ganzfried, translated by Hyman E. Goldin, LL.B., published by The Star Hebrew Book Co., U. S. A., 1928 (Chap. CXCIX, p. 105, ¶ 11), concerning disinterment: " The dead should not be removed (for burial) from a city where there is a cemetery to another city, unless it be from any country to Palestine, or if he had to be removed, to the burial ground of his fathers. *If he had commanded that his remains should be conveyed from one place to another, it is likewise permitted."* (Italics mine.)

And in paragraph 12 thereof there is the statement: " It is forbidden to open a grave after it has been closed, that is after the earth has been heaped upon the lid of the coffin, but, as long as the earth had not been piled thereon, it is permitted to open the coffin if there were occasion for it. If because of a very urgent reason it be required that the body of the dead be removed from a grave, an eminent Rabbi should be consulted."

In the Jewish Encyclopedia (Vol. 4, p. 613), published by Funk & Wagnalls, there is a discussion on the question which supports the contentions advanced by the petitioner to the effect that where the burial took place with the intention of later removing the

body, disinterment is permissible, and that further if the body is to be reinterred in a family plot, it is also permissible (even where it was not buried with the intention of removal). In the last instance it is stated that there is a difference of opinion among authorities even of the Orthodox Jewish faith as to the interpretation of that portion of paragraph 363 of the Yoreh Deiah, which provides that " in the midst of his own it is permitted, even from an honorable grave to a contemptible, for it is pleasant for a man to rest alongside of his fathers." One group of rabbis contends that the body may not be removed for reinterment in another cemetery in a plot which has been secured since the death of the deceased, and the other that this can be done. In support of the latter view the above-cited article in the Jewish Encyclopedia states: " Those who favor removal in such a case take the words ' it is pleasant for a man to repose alongside of his fathers ' in a larger sense, conveying the idea that to be buried in a family plot is presumably desirable to any man, and it matters not whether the family plot has been already brought into use or is to be consecrated for future time. In corroboration of this view they refer to the fact that the older Baraita in Massek. Semahot, *l. c.*, as well as the Kol Bo, makes no mention of ' alongside of his fathers; ' the former simply stating as the reason that ' it is conferring an honor upon the dead ' (she-zeh hu kebodo)."

If eminent rabbis differ upon the interpretation of this phrase, one group interpreting it strictly and the other liberally, it seems to me justified for this court of equity to be guided by the liberal point of view, where, as here, all of the nearest of kin of the decedent desire the removal of the body to a family plot, for, as stated by Judge CARDOZO in *Yome* v. *Gorman* (242 N. Y. 395, at p. 403): " Removal at the instance of a wife or of kinsmen near in blood to satisfy a longing that those united during life shall not be divided after death, may seem praiseworthy and decorous, when removal at the instance of distant relatives or strangers would be arbitrary or cruel."

Accordingly, the application is granted, on condition that a surety undertaking in the sum of $200 be posted to indemnify the society for any damage which may be done to surrounding graves or grounds as a result of the disinterment.

Settle order on notice.