In the Matter of the Application of ARTHUR B. CURRIER, Respondent. WOODLAWN CEMETERY, Appellant.

Argued November 14, 1949; decided December 29, 1949.

*Edward I. Devlin, Jr.*, for appellant. The desire of decedent to be interred in the mausoleum which she erected should be respected. (*Matter of Eichner*, 173 Misc. 644; *Matter of Scheck*, 172 Misc. 236; *Matter of Johnson*, 169 Misc. 215; *Matter of Smith* v. *Green-Wood Cemetery*, 173 Misc. 215; *Matter of Herskovits [Herman]*, 183 Misc. 411; *Matter of Ackermann*, 124 App. Div. 684; *Matter of Donn*, 14 N. Y. S. 189; *Lowrie* v. *Plitt*, 11 Phila. 303; *Yome* v. *Gorman*, 242 N. Y. 395; *Matter of Schechter*, 261 App. Div. 926; *Matter of Bobrowsky*, 266 App. Div. 849.)

*Max Epstein* for respondent. The granting of the application rested in the sound discretion of Special Term and the exercise of said discretion, having been affirmed by the Appellate Division, will not be reviewed by the Court of Appeals. (*Matter of Schechter*, 261 App. Div. 926; *Matter of Bobrowsky*, 266 App. Div. 849; *Raisler* v. *Krakauer Simon Schreiber Congregation*, 47 N. Y. S. 2d 938; *Matter of Bauer*, 36 Misc. 33; *Matter of Plancher*, 37 N. Y. S. 2d 87; *Matter of Katz*, 167 Misc. 301; *Yome* v. *Gorman*, 242 N. Y. 395; *Matter of Baltimore Mail S. S. Co.* v. *Fawcett*, 269 N. Y. 379; *Nann* v. *Raimist*, 255 N. Y. 307; *Harriss* v. *Tams*, 258 N. Y. 229.)

FULD, J. The courts below have granted petitioner permission to remove his mother's body from a mausoleum in Woodlawn Cemetery to a grave in a lot nearby. Whether that determination exceeds the bounds of permissible discretion is the question for decision.

Mrs. Margaret Currier had purchased the burial lot a few months before acquiring the land on which she later erected the mausoleum, and it was in that structure that she was interred when she died some twenty years ago. It was her hope that in

time her children, a son and two daughters, would be laid to rest beside her in the tomb. However, the daughters, married and living in Missouri, have made arrangements to be buried in that state, and her son has expressed the intention of being interred in a grave in the adjacent lot. Early in 1949, the children sought to have their mother's body transferred to this plot from the mausoleum, but the corporation operating the cemetery refused its consent. Its refusal necessitated the son's application to the courts under section 89 of the Membership Corporations Law. That section provides that, if either the owners of the plot, or the surviving wife, husband, children or parents, or the cemetery corporation withhold consent to the removal of the body, " permission by the county court of the county, or by the supreme court in the district, where the cemetery is situated, shall be sufficient."

The quiet of the grave, the repose of the dead, are not lightly to be disturbed. Good and substantial reasons must be shown before disinterment is to be sanctioned. (See *Yome* v. *Gorman,* 242 N. Y. 395, 403; *Matter of Ackermann,* 124 App. Div. 684, 685.) While the disposition of each case is dependent upon its own peculiar facts and circumstances and while no all-inclusive rule is possible, the courts, exercising a " benevolent discretion ", will be sensitive " to all those promptings and emotions that men and women hold for sacred in the disposition of their dead ". (*Yome* v. *Gorman, supra,* 242 N. Y., at p. 402.) And looming large among the factors to be weighed are the wishes of the decedent himself. If the deceased had been a member of a faith which forbade disinterment, if he had agreed with the cemetery corporation that there should be no exhumation whatsoever, if he had elected to be laid in hallowed earth and the request was for reburial in unconsecrated ground, then only compelling considerations would justify disinterment and removal. (See *Yome* v. *Gorman, supra,* 242 N. Y. 395; *Cohen* v. *Congregation Shearith Israel,* 114 App. Div. 117, affd. 189 N. Y. 528.)

But the case before us presents no such factors. Here, only the cemetery corporation, at best a formal party, opposes the removal. Those most closely bound to the deceased by ties of love and affection would have her body moved from the mausoleum to a grave close by. And we are persuaded that

there was basis for concluding that not whim or caprice motivated their decision, but rather sound reason and laudable purpose. It may well have been Mrs. Currier's intention that she be interred in the mausoleum and that it house her body and those of her children but, the courts could find, it was her desire, prime and paramount, that her children be with her after death. When, therefore, it appeared that that expectation was not to be realized — because the daughters will be buried in another state and the son prefers an earthy grave — the courts below were warranted in deciding that, if presented with the alternative of remaining alone in the sepulcher or of being with her son and his family in the earth, she would have chosen the latter. Surely, there is nothing unreasonable or arbitrary about a determination that permits removal '' to satisfy a longing that those united during life shall not be divided after death ''. (*Yome* v. *Gorman,* 242 N. Y., at p. 403.)

The order of the Appellate Division should be affirmed, with costs.

CONWAY, J. (dissenting). We think that on this record there was no room at Special Term for the exercise of discretion in favor of petitioner and that its attempted exercise was error as matter of law. No case has been called to our attention in this or any other State which discloses the exercise of discretion on facts such as those here presented. The statute presented for our consideration is section 89 of the Membership Corporations Law. It reads as follows: '' A body interred in a lot in a cemetery owned or operated by a corporation incorporated by or under a general or special law may be removed therefrom, with the consent of the corporation, and the written consent of the owners of the lot, and of the surviving wife, husband, children, if of full age, and parents of the deceased. If the consent of any such person or of the corporation can not be obtained permission by the county court of the county, or by the supreme court in the district, where the cemetery is situated, shall be sufficient. Notice of application for such permission must be given, at least eight days prior thereto, personally, or, at least sixteen days prior thereto, by mail, to the corporation or to the persons not consenting, and to every other person or corporation on whom service of notice may be required by the court.'' As originally enacted (L. 1880, ch. 566) it was in the form of

an enabling or immunizing statute — a pronouncement that removal of a body under the circumstances outlined was a lawful removal. In 1908 it was so explained in *Matter of Ackermann* (124 App. Div. 684, 685), as follows: " The evident purpose of the legislation was to settle a question long mooted as to the right of cemetery corporations to allow disinterments and of the rights of relatives of deceased persons to cause such disinterments to be made, concerning which matters much doubt existed independently and irrespective of the question of unlawful disinterments which stands upon an entirely different basis. It will be seen by scrutinizing the language of this section that there is nothing contemplated except a general authority. Who may apply or for what reasons or what on application may be regarded as sufficient are matters not referred to or regulated. * * * The law throws around the bodies of deceased human beings a protection even in their graves. The right of Christian sepulture includes the right to have one's remains respected in his or her last resting place. Many circumstances arise from time to time necessitating a disturbance of the repose of the dead, but it must be some controlling public reason or superior private right which should induce the court to permit that to be done which from time immemorial has been considered abstractly as a work of desecration."

The cemetery organization is much more than a formal party. The Legislature has confided to it the absolute right to prevent removal subject only to the power of a court to overrule that action. In the original and present statutes, the Legislature has put the cemetery organization first. It is indeed the one which may protect the deceased by insuring scrutiny by a court of the purpose of, and then justification for, a disinterment. The rules and regulations of the Woodlawn Cemetery provide for the approval and consent of the corporation and application to the Supreme Court in event of refusal of such consent. For a court to grant permission for a disinterment under section 89, when consent has been refused by the corporation, there must be some impelling and controlling reason presented which is consonant with legal right and public policy before the court may overrule the refusal. We think it would be error to read section 89 of the Membership Corporations Law as

indicating intent upon the part of our Legislature to permit the disinterment of a body for good reason or poor reason *merely because* the consent of the cemetery corporation and the written consent of the owners of the lot and of the relatives enumerated in that section had been obtained. For instance, in properly construing section 89, we think we may say with certainty that it was not the legislative intent that if all those mentioned in this section consented, that thereupon children could disinter their parents' remains and place them in a cheaper lot in the same or another cemetery so as to sell the more costly lot from which they were taken. That would be contrary to the statute as we read it. It would be contrary to the teachings of all churches (see, e.g., *Matter of Weinstein*, 243 App. Div. 738; *Yome* v. *Gorman*, 242 N. Y. 395; *Matter of Ackermann, supra*) and the customs of civilized nations. Even more clearly is it evident that mere desire by children for their mother's disinterment is not sufficient since she had the legal right while living to direct the manner in which her body should be disposed of after death (Penal Law, § 2210) and made such direction. To put it in different words, no court has the power to impair an acknowledged and statutorily established legal right by saying that it is done in the name of discretion. In such a situation, as we said above, there is no room for the exercise of discretion.

These are the facts in the petition and affidavit in opposition: Petitioner's mother, Margaret Currier, purchased in the Woodlawn Cemetery in May, 1923, a plot of ground containing six graves (220 superficial feet) and shortly thereafter had interred therein a friend and also the father-in-law of petitioner. Two months later she purchased a much larger plot containing 1,500 superficial feet. Upon the latter plot she erected a mausoleum containing eight crypts. The petition recites and it is conceded that the decedent intended at the time the mausoleum was erected that she be interred in one of the crypts. Arrangements were made to that end. Upon her death in January, 1927, her wishes were carried out and she was interred in her mausoleum There she has remained for twenty-two years.

The petitioner has now come forward and, while asserting that his mother intended to be buried in the mausoleum, alleges

that she also intended that he and his two sisters or their heirs should be interred there; that his sisters reside in Missouri where they wish to be buried; that "No one else can be buried in any of the catacombs of said mausoleum, as we, her only children have no desire that at the time of our decease to be buried there, but wish to be *buried in the ground,* of which there are six graves "; that "It was the wish of my Mother that the family be buried together, and the only way that we can be together is to remove the only body which is now in the Mausoleum to the grave which we own, and which is close by and near where the mausoleum is erected." (Emphasis supplied.) The grave referred to is the original six-grave plot purchased by his mother.

It is not true that no one else can be buried in the mausoleum — his mother's remains are the only ones there and there are eight crypts. The petitioner may be buried there as he asserts his mother wished. Neither is it true, for the same reason, that the only way petitioner and his mother may be together is to remove her from the mausoleum. There is ample room in the plot upon which the mausoleum stands for petitioner to there have his wish granted "to be buried in the ground ". Those latter are his words and rather indicate that the reason his mother bought the second plot and built the mausoleum was because she did not wish "to be buried in the ground ". There are many who do not. To such persons, and to all others, our Legislature as a matter of public policy has granted by section 2210 of the Penal Law the absolute right to direct the manner in which their bodies shall be disposed of after death. That section, insofar as material here, reads as follows: "A person has the right to direct the manner in which his body shall be disposed of after his death;  *  *  *." When such direction has been established, whether by will or parol, it is paramount to all other considerations and no court may override it. (*Matter of Eichner,* 173 Misc. 644; *Matter of Scheck,* 172 Misc. 236; *Matter of Johnson,* 169 Misc. 215 [containing a scholarly and exhaustive treatment of the subject by Surrogate DELEHANTY]; *Matter of Smith* v. *Green-Wood Cemetery,* 173 Misc. 215; *Matter of Herskovits* [*Herman*], 183 Misc. 411.) That direction is, of course, subject to public right or necessity (see *Widening of Beekman Street,* 4 Bradf. 503) or

superior private right (*Matter of Ackermann,* 124 App. Div. 684, *supra*) but no such right is claimed here.

There are cases in which the court has permitted the removal of a body from a plot belonging to an interment society or religious congregation and its reburial in a newly acquired family plot by a member of decedent's family. There the permission is granted on the theory that if the deceased person had the opportunity to express his wish, it would be to be buried with his relatives in a family plot rather than in the omnibus plot. In *Cohen* v. *Congregation Shearith Israel* (114 App. Div. 117, affd. 189 N. Y. 528) the interment was a conditional one in a row of graves for which a nominal charge was made and the removal sought was by decedent's eight children so that she, their father and they might be buried together. We note in passing that a referee was there appointed who heard testimony and made findings. With the exception of one case, *Yome* v. *Gorman* (242 N. Y. 395, *supra*), all of the cases cited by respondent are of that type. They merely support the general rule that it is the wish of the deceased as to the disposition of his body which is to be given paramount effect.

There are also cases involving applications for disinterment where there are difficulties due to differences in religious faith. (See for instance, *Yome* v. *Gorman, supra.*)

None of those situations is presented here. There is truly no reason for this application. In the smaller plot there are already two persons buried, neither of whom is related to the decedent. It is clear that decedent had no desire to have those persons buried with her or she would have arranged for it in her lifetime. In the mausoleum there is but one body — that of decedent. If her body be removed there will be a vacant mausoleum which, as an asset of her estate, must be disposed of within a reasonable time. There is no reported case which we have found where desire of the living for the sale of a mausoleum was reason for the disinterment of one who had built it to be her last resting place.

Those are the facts disclosed by the petition and answering affidavit. However, there are other facts, withheld from Special Term, of which we take judicial notice since they affect the decedent here and are from the records of the Surrogate's

Court in the same judicial district and department of the Supreme Court to which the petition was presented (*Matter of Ordway*, 196 N. Y. 95; *Matter of Clarke*, 145 Misc. 660, and cases there cited) and are essential to the preservation of the dignity of and of respect for the court. Those records disclose that the Surrogate of New York County admitted to probate the will of the decedent Margaret Currier, recorded in liber 1357, page 403, in 1927, in March of 1927, and that it contained, in addition to bequests of some thirty odd thousand dollars, the following provisions:

" 9th I direct that my remains be interred in the plot owned by me in Woodlawn Cemetery, New York City, and that a suitable mausoleum be erected thereon by my Trustee, hereinafter named, at a cost not to exceed the estimate prepared by Farrington, Gould & Hoagland, Inc. of 258 Broadway, New York City, it being my desire that a mausoleum be constructed of the character and durability suggested by the last named Company in a sketch heretofore submitted to me."

" 11th All the rest, residue and remainder of my estate, of whatever character and wheresoever situated, together with any lapsed legacies, I give, devise and bequeath as follows:

" One-third (⅓rd) thereof to my son, Arthur B. Currier, of New York City, if living; * * *

" One-third (⅓rd) thereof to my daughter, Lorena M. Mac-Keen, of St. Louis, Missouri, if living; * * *

" One-third (⅓rd) thereof to my daughter, Viola M. Lloyd, of St. Louis, Missouri, if living; * * *."

Thus it appears (1) that decedent's two daughters were living in St. Louis, Missouri, in July, 1926, when she made provision for her burial in the mausoleum, (2) that her prime desire was to be buried in a mausoleum designed for and satisfactory to her and that no desire that her children be buried with her or she with them was expressed, and (3) that there is a direct pecuniary interest of the petitioner and his sisters in the mausoleum if their mother's remains can be moved out of it. We further judicially notice that the sum of $10,623 was paid by her corporate bank trustee on account of or in full payment for the mausoleum and that on *final accounting* in 1931 the decedent's estate was $375,153.97.

We need not pause now to determine whether Special Term should have taken proof of the facts and circumstances more particularly as to whether there was a will providing for the manner in which decedent wished her body disposed of after death.   (Penal Law, § 2210.)

Even were we to hold that there was room for discretion here, the exercise of it on this record was an abuse of discretion as a matter of law.   We had occasion to point out earlier this year in *Bunim* v. *Bunim* (298 N. Y. 391, 393, 394, DESMOND, J.), that the exercise of judicial discretion must have sound and substantial basis in the facts presented and that where there is none, there is an abuse of discretion as matter of law and this court has jurisdiction to review and duty to reverse.

The order should be reversed and the application dismissed, with costs.

LEWIS, DESMOND and DYE, JJ., concur with FULD, J.; CONWAY, J., dissents in opinion in which LOUGHRAN, Ch. J., and BROMLEY, J., concur.

Order affirmed.