OPINION OF THE COURT
David Goldstein, J.
This is a special proceeding pursuant to Not-For-Profit Corporation Law § 1510, commenced by two daughters of decedent Jacob J. Polstein, for an order permitting the disinterment of their father from Mount Hebron Cemetery, Flushing, New York, and reburial in the Star of David Cemetery in Florida, where their mother (decedent’s wife) is buried. The *821 application is opposed by a third daughter, thus necessitating this application for judicial approval.
The underlying facts are not in dispute. Jacob Polstein died approximately 14 years ago and was buried in Mount Hebron Cemetery. He was survived by his wife, Lena, and three daughters, all of whom thereafter relocated to Florida. According to petitioners, when Lena died in 1988, the three daughters purchased two burial plots in Florida, one for their mother and the second for removal and reinterment of their father. The sum of $5,000 was set aside in an escrow account from the assets of the estate to cover any expenses which may be incurred. When respondent refused to consent to the removal, this proceeding was brought.
Although petitioners claim that all three sisters initially agreed to the reburial and that respondent has now had a change of heart, to the contrary, respondent claims, (1) there never was any agreement, (2) it was her sister, Edith Farber, who on her own, directed that the attorney for the estate place $5,000 in escrow to cover the cost of such removal and, (3) the escrow deposit reduced the distributive share of each of the three sisters.
Pursuant to Not-For-Profit Corporation Law § 1510, a body interred in a cemetery may be removed upon the consent of the cemetery corporation and the written consent of the owners of the plot, the surviving spouse, adult children and parents of the deceased. Leave of court is necessary only where such consents cannot be obtained (Orlin v Torf, 126 AD2d 252). Any such application is addressed to the discretion of the court, with disposition dependent upon the facts and circumstances of each case, not on any "all-inclusive rule” (see, Matter of Currier [Woodlawn Cemetery], 300 NY 162, 164). As was observed by Judge Fuld in Currier (supra): "Good and substantial reasons must be shown before disinterment is to be sanctioned.” The operative standard is based upon equitable principles (Matter of Davis v Congregation Chevra Torah Anshei Radishkowitz, 21 Misc 2d 825, 826), with due consideration given to the expressed wish of the decedent and of those "most closely bound to the deceased by ties of love and affection” (Matter of Currier [Woodlawn Cemetery], supra, at 164; Matter of Teitman v Elmwier Cemetery Assn., 3 Misc 2d 143). As was aptly stated by Judge Cardozo in Yome v Gorman (242 NY 395, 403): "Removal at the instance of a wife or of kinsmen near in blood to satisfy a longing that those united during life shall not be divided after death, may seem praise *822 worthy and decorous when removal at the instance of distant relatives or strangers would be arbitrary or cruel. The dead are to rest where they have been laid unless reason of substance is brought forward for disturbing their repose”.
Thus, several decisions have authorized removal and reburial in deference to and in accordance with the desires of close surviving relatives, notwithstanding opposition by the cemetery corporation (Matter of Currier [Woodlawn Cemetery], supra; Matter of Hubbard, 47 Misc 2d 315; Matter of Morochnick v First Ludmir Benevolent Socy., 35 Misc 2d 71), or by the religious organization through whom the cemetery plot was obtained, in those cases where the applicable rules of the cemetery required the prior consent of the religious organization (Matter of Davis v Congregation Chevra Torah Anshei Radishkowitz, supra; Matter of Sherman, 107 NYS2d 905; Matter of Katz, 167 Misc 301).
In contrast, in Matter of Band (117 AD2d 597), the Appellate Division, Second Department, affirmed the denial of a child’s application to exhume her mother’s body for a reautopsy. Five years earlier, an autopsy was conducted, which established the cause of death as "asphyxia by unspecified means.” Thereafter, petitioner’s father was convicted of the murder of his deceased wife, petitioner’s mother. Notwithstanding the challenge to the sufficiency and adequacy of the procedures followed on the original autopsy, the court held that good and substantial reason had not been demonstrated, since it was neither argued nor shown that a second autopsy would yield results different from or more conclusive than the first. The application in Band was opposed by the father and by petitioner’s brother, both on personal and religious grounds.
In Matter of Currier (supra), the Court of Appeals upheld the order granting petitioner’s application to remove his mother’s body from a mausoleum, for reburial in a nearby plot in the same cemetery. Mrs. Currier had purchased the nearby lot months before acquiring the land on which the mausoleum was built. She was interred in the tomb, which was large enough to accommodate herself and her three children — a son and two daughters. Since that time, however, over the ensuing 20 years, the daughters had married and relocated to Missouri. In the event of their death, they were to be buried in that State. In addition, the son expressed his intention to be interred in a grave in the adjacent lot. As a result, he sought permission to remove his mother’s body from *823 the tomb, for reinterment in the adjacent plot, which application was granted over the objection of the cemetery corporation. In doing so, the court, in the exercise of the "benevolent discretion” referred to in Yome v Gorman (supra, at 402), gave effect to the wishes of the decedent, namely, her paramount concern that her children be with her after death (300 NY, at 165): "When, therefore, it appeared that that expectation was not to be realized — because the daughters will be buried in another state and the son prefers an earthy grave — the courts below were warranted in deciding that, if presented with the alternative of remaining alone in the sepulcher or of being with her son and his family in the earth, she would have chosen the latter. Surely, there is nothing unreasonable or arbitrary about a determination that permits removal 'to satisfy a longing that those united during life shall not be divided after death’. (Yome v. Gorman, 242 N. Y., at p. 403.)”
Similarly, in this case, the desire of both decedents to be buried next to each other is readily apparent. This was initially provided for by the burial plot in Mount Hebron and, later, after the mother died, when the three daughters purchased space for two burial lots in Florida. Although there is nothing in the record to reflect an actual consent by respondent, it is clear that she knew, at least since February 1989, when the assets of her mother’s estate were distributed, that $5,000 was to be withheld to cover the cost of removing her father’s body and for reburial in Florida. As far as appears, no objection was ever raised to the contemplated reinterment and withholding of a portion of the distributable assets of the estate.
While respondent has appeared in opposition to the petition, she does not state the underlying reason for her objection to the relief sought herein. Whether the unexpressed motivation is some bad blood — either among the sisters, or between respondent and her mother or father — does not appear. Nor does it appear whether respondent’s present actions have been influenced by pecuniary considerations, namely, that the escrow includes $1,250, as her distributive share of the escrow if the decedent’s body were not to be removed and reburied.
Our courts have been loathe to protect a party who opposes reinterment, where the real interest of the objector is the money he or she may obtain from the estate should disinterment of the remains not take place (Matter of Wechsler, 191 NYS2d 870, 871; 18 NY Jur 2d, Cemeteries and Dead Bodies, § 106, at 120).
*824 Almost all of the reported decisions deal with a situation where disinterment is sought by a close family member and where an objection is raised either by a distant relative or by the cemetery corporation. No decision has been cited or found involving a dispute between siblings or other equally close relatives as to the appropriate disposition of the remains of a decedent. To that extent, the issue posed is somewhat novel and unique.
Nevertheless, in my view, the same standard and equitable considerations ought to obtain here. The relevant criteria, in the exercise of this court’s "benevolent discretion,” is whether good and substantial reason has been shown to warrant disinterment. Under the facts and circumstances of this case, plainly, reinterment is justified here, especially bearing in mind the clear intention of both decedents that their final resting place be together and the undisputed fact that all surviving relatives now reside in Florida. Removal and reburial would facilitate visits by petitioners and other close relatives and, in terms of resting place, would unite in death a couple who had shared many fruitful years of life together. This clearly outweighs the personal or pecuniary interest sought to be fostered by respondent’s opposition.
Moreover, although there is a factual dispute between the parties as to whether there was an agreement to disinter the father’s body, no hearing on that issue is required here. Assuming that the parties testified in substance in accordance with the affidavits submitted on this application, the court would still be left with the issue whether equitable considerations favor disinterment. In my view, judicial sanction to the change in location would promote both the wishes of the decedents and the desires and motives of surviving next of kin. Such a disposition would also give effect to prevailing equitable notions of fairness and decency "that those united during life shall not be divided after death” (Yome v Gorman, supra, 242 NY, at 403).
Accordingly, the application is granted, permitting disinterment and reburial with decedent’s wife at the Star of David Cemetery in Florida.