OPINION OF THE COURT
Richard B. Liebowitz, J.
Petitioners’ son, William J. Bochnik (William), died suddenly on January 24, 2010. Respondent Dina Fazio-Bochnik (hereinaf *270 ter Dina) and William had divorced more than three years prior to his death. Their marriage produced one child, M., date of birth x/xx/01 (M.). William died without a surviving spouse and no other children. At the time of William’s death, Dina stated that she was in possession of William’s will and that the will named her executrix of William’s estate. Dina has proffered a copy of the unexecuted will (which mistakenly refers to M. as “N.”), but a correct and fully-executed version has never been produced. Petitioners allege that Dina knew the will was not valid and that her actions after William’s death were calculated to deceive them. Nevertheless, at the time of William’s death, the parties operated under the assumption that William had empowered Dina to determine his final resting place. She chose to have him interred in a mausoleum at respondent Gate of Heaven Cemetery.
Upon learning that Dina was never actually entitled to determine William’s burial site, petitioners brought the instant special proceeding to disinter William’s remains and transfer them to the family plot located at St. Mary’s Cemetery. Petitioners argue that since William died intestate, Public Health Law § 4201 (2) (a) provides the controlling rule for the right to administer the disposition of his remains.
Public Health Law § 4201 (2) (a), in pertinent part, states that
“[t]he following persons in descending priority shall have the right to control the disposition of the remains of such decedent:
“(i) the person designated in a written instrument executed pursuant to the provisions of this section;
“(ii) the decedent’s surviving spouse;
“(ii-a) the decedent’s surviving domestic partner;
“(iii) any of the decedent’s surviving children eighteen years of age or older;
“(iv) either of the decedent’s surviving parents
Since William died without having designated a representative pursuant to a validly executed written instrument, without a surviving spouse and with a child under 18 years of age, petitioner surviving parents assert that they are the only people permitted by law to control the disposition of William’s remains. Although Public Health Law § 4201 (2) (a) sets forth a hierar *271 chy of priority of the right to control a decedent’s remains, N-PCL 1510 (e) is the statute which governs the requirements for disinterment of a body. (Matter of Eirand-Herskowitz v Mt. Carmel Cemetery Assn., 27 Misc 3d 1213[A], 2010 NY Slip Op 50728[U], *4-5 [Sup Ct, Queens County 2010]; Matter of Dutcher v Paradise, 217 AD2d 774, 775 [3d Dept 1995].)
N-PCL 1510 (e) provides that
“[a] body interred in a lot in a cemetery owned or operated by a corporation incorporated by or under a general or special law may be removed therefrom, with the consent of the corporation, and the written consent of the owners of the lot, and of the surviving wife, husband, children, if of full age, and parents of the deceased. If the consent of any such person or of the corporation can not be obtained, permission by the county court of the county, or by the supreme court in the district, where the cemetery is situated, shall be sufficient.”
Petitioners aver that respondent Gate of Heaven is a not-for-profit corporation. Upon contacting Gate of Heaven for authorization to remove William’s remains, they were informed that Gate of Heaven requires a court order before it will acquiesce in a body’s disinterment. Dina is the crypt owner and so petitioners also requested her consent to remove William’s remains. Dina refuses to consent to the disinterment. Therefore, petitioners request that this court issue an order to disinter William’s body as required by N-PCL 1510 (e).
Dina alleges that William told her he did not want to be buried underground and that he wanted to be laid to rest specifically in Gate of Heaven. Petitioners maintain that while attending his uncle’s funeral at St. Mary’s Cemetery, William advised his brother that he wished to be buried there. Dina contends that M. derives immense comfort from the fact that he can view his father’s burial site from the back porch of his house. Dina submitted an affidavit from M.’s psychologist in which the psychologist expresses his opinion that moving William’s remains “would be detrimental” to M. and would cause him “emotional turmoil and trauma.”
A court charged with determining whether a body should be disinterred must employ “[a] benevolent discretion, giving heed to all those promptings and emotions that men and women hold sacred in the disposition of their dead, must render judgment as it appraises the worth of the competing forces” (Yome v Gor *272 man, 242 NY 395, 402 [1926] [citations omitted]). “The quiet of the grave, the repose of the dead, are not lightly to be disturbed. Good and substantial reasons must be shown before disinterment is to be sanctioned.” (Matter of Currier [Woodlawn Cemetery], 300 NY 162, 164 [1949].) However, “[w]hile the repose of the dead should not lightly be disturbed, where there is a controlling public reason or a superior private right, the court should not hesitate to permit a disinterment.” (Matter of Peruso, 58 Misc 2d 915, 916 [Sup Ct, Queens County 1969].) In the present case, Public Health Law § 4201 (2) (a) propounds a superior private right to control William’s remains which unequivocally belongs to William’s parents.
While this court expresses sympathy for the grief that M. might experience should William’s remains be moved, Dina has failed to adduce evidence sufficient to defeat the superior right that petitioners have to control their son’s remains. The psychologist’s affidavit is conclusory and rife with vague allegations which ultimately serve to contradict its thesis that the daily viewing of his father’s burial site is beneficial for M. Whether petitioners’ right to control the disposition of their son’s remains was taken from them by innocent or deceptive actions on the part of Dina, this court has the power to afford them the rights that they are accorded by New York State law— the decision to have their son buried in the very cemetery where they plan to be buried and where members of their family currently rest. Moreover, the court notes that St. Mary’s Cemetery is a short drive from M. and Dina’s residence. Should M. desire to visit his father, the new burial site in Yonkers, New York will not provide an obstacle to his wishes.
On the basis of the foregoing, it is hereby ordered that the petition of Barbara Bochnik and Joseph Bochnik for an order pursuant to Not-For-Profit Corporation Law § 1510 (e), Public Health Law § 4201 and article 4 of the CPLR granting them the right to control the remains of their deceased son, William J. Bochnik, is granted; and it is further ordered that petitioners are granted the right to remove the remains of William J. Bochnik from Gate of Heaven Cemetery in Hawthorne, New York and inter same in Grave 69, Plot 23, Section Y at St. Mary’s Cemetery in Yonkers, New York; and it is further ordered that petitioners shall bear all reasonable costs for the removal, transportation and burial of the remains of William J. Bochnik incurred by the cemeteries and funeral home involved, and shall *273 obtain all necessary permits prior to such removal, transportation and burial.