Matter of Cunningham v Trustees of St. Patrick's Cathedral (2018 NY Slip Op 00815)





Matter of Cunningham v Trustees of St. Patrick's Cathedral


2018 NY Slip Op 00815


Decided on February 6, 2018


Appellate Division, First Department


Richter, J.P., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 6, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rosalyn H. Richter,J.P.
Troy K. Webber
Cynthia S. Kern
Anil C. Singh
Peter H. Moulton, JJ.


154933/16 4847 

[*1]In re Joan Sheen Cunningham, Petitioner-Respondent,
v
Trustees of St. Patrick's Cathedral, et al., Respondents-Appellants.



Respondents appeal from the order of the Supreme Court, New York County (Arlene P. Bluth, J.), entered on or about November 17, 2016, which granted the petition to disinter the remains of Archbishop Fulton J. Sheen and transfer them from St. Patrick's Cathedral in New York, New York to St. Mary's Cathedral in Peoria, Illinois.




Kelley Drye & Warren LLP, New York (John M. Callagy, Neil Merkl and Malavika A. Roa of counsel) for appellants.
Law Office of Steven Cohn P.C., Carle Place (Steven Cohn and Alan S. Zigman of counsel), for respondent.



RICHTER, J.P.


Fulton J. Sheen was a renowned Archbishop of the Roman Catholic Church. Archbishop Sheen was born in 1895 in El Paso, Illinois, and grew up in nearby Peoria. After completing his seminary studies in Minnesota, he returned to Peoria where he was ordained a priest and served his first pastoral assignment. After leaving Peoria, Archbishop Sheen taught in Washington, D.C. for about 25 years. While there, Archbishop Sheen regularly traveled to New York City to host The Catholic Hour, a weekly radio show that was broadcast from 1930-1950. In 1951, he moved to New York and was consecrated a Bishop of the Archdiocese of New York. From 1952-1957, Archbishop Sheen was the host of Life is Worth Living, a weekly television show that drew millions of viewers and won him an Emmy Award. In 1966, Archbishop Sheen was transferred to Rochester, New York, and retired three years later. Archbishop Sheen then [*2]returned to New York City, where he remained until his death in 1979.
Five days before his death, Archbishop Sheen executed a will, wherein he directed that his funeral service be celebrated at St. Patrick's Cathedral in New York City, and his burial be in "Calvary Cemetery, the official cemetery of the Archdiocese of New York." Upon Archbishop Sheen's death, Terence Cardinal Cooke, then the Archbishop of New York, approached petitioner Joan Sheen Cunningham, Archbishop Sheen's niece and closest living relative, seeking permission to bury her uncle in the crypt at St. Patrick's Cathedral. Petitioner consented, and Archbishop Sheen was laid to rest in a crypt under the church's high altar, where he remains interred.
In 2002, Bishop Daniel R. Jenky of the Diocese of Peoria officially began the process of investigating whether Archbishop Sheen should be canonized a Saint of the Roman Catholic Church. According to Bishop Jenky, Archbishop Sheen's Beatification, the first step toward Sainthood, is "imminent," and it is anticipated that the Beatification ceremony will take place in Peoria. In 2014, the Diocese of Peoria requested that Archbishop Sheen's remains be transferred there. Respondents Trustees of St. Patrick's Cathedral and the Archdiocese of New York declined to transfer the remains, and alleged that petitioner did not want the body to be moved.[FN1]
In June 2016, petitioner brought a proceeding pursuant to Not-For-Profit Corporation Law § 1510(e) seeking to disinter the remains of Archbishop Sheen for removal and transfer to a crypt located in St. Mary's Cathedral in Peoria. Petitioner submitted the affidavits of her three siblings, all of whom fully support and consent to the transfer [FN2]. Petitioner and her siblings state that they wish to transfer the remains of their uncle for the following reasons: (i) Archbishop Sheen grew up in Peoria, his parents are buried there, and the majority of his next of kin continue to reside nearby; (ii) St. Mary's Cathedral is the church where Archbishop Sheen attended services with his family, received his First Holy Communion, and was ordained a priest; (iii) Archbishop Sheen frequently visited St. Mary's Cathedral throughout his lifetime; (iv) a shrine to Archbishop Sheen is being built in St. Mary's Cathedral where the burial crypt will be located; and (v) if Archbishop Sheen knew during his lifetime that he would be declared a Roman Catholic Saint, it would have been his wish to be interred at St. Mary's Cathedral. Petitioner and her siblings state that they know of no other relative who would object to the request to transfer the remains.
Respondents answered the petition and objected to the request for disinterment, arguing that petitioner had previously consented to Archbishop Sheen's burial in St. Patrick's Cathedral, and that his will had directed burial in New York. Respondents submitted an affidavit of [*3]Monsignor Hilary C. Franco, who was Archbishop Sheen's assistant from 1962-1967, and remained his close friend thereafter. According to Monsignor Franco, Archbishop Sheen expressed many times a "desire to remain in New York even after his death." Monsignor Franco also related that Archbishop Sheen was "fond of repeating" that Cardinal Cooke had offered that he be buried in the crypt at St. Patrick's Cathedral.
In a decision entered November 17, 2016, the petition court granted the disinterment request. The court found that petitioner had presented "good and substantial reasons" to disinter the remains of Archbishop Sheen and transfer them from St. Patrick's Cathedral to St. Mary's Cathedral in Peoria. The court concluded that because Archbishop Sheen's stated wish to be buried in Calvary Cemetery was not followed, it would defer to the wishes of the family. In reaching its decision, the court stated that there were no conflicting accounts as to Archbishop Sheen's burial wishes, and rejected as "unsupported speculation" respondents' claim that Archbishop Sheen wanted his remains to stay in New York. Respondents now appeal.
A body may be disinterred upon the consent of the cemetery owner, the owners of the lot, and certain specified relatives of the deceased (Not-For-Profit Corporation Law § 1510[e]). If such consent cannot be obtained, a court may grant permission to disinter (id.). There must be a showing of "[g]ood and substantial reasons" before disinterment is allowed (Matter of Currier [Woodlawn Cemetery], 300 NY 162, 164 [1949]). Although "each case is dependent upon its own peculiar facts and circumstances" (id.), "[t]he paramount factor a court must consider in granting permission to disinter is the known desires of the decedent" (Brandenburg v St. Michael's Cemetery, 92 AD3d 631, 632 [2d Dept 2012]). "Among other factors, a court must also consider the desires of the decedent's next of kin" (id.). Where issues of fact have been raised concerning the decedent's wishes, the court should order a hearing (see Matter of Briggs v Hemstreet-Briggs, 256 AD2d 894, 895 [3d Dept 1998]).
Applying these principles, we believe that a hearing is required because there are disputed issues of material fact as to Archbishop Sheen's wishes. The petition court found that it was speculative that Archbishop Sheen wanted his remains to stay in New York, and that respondent's claim that Archbishop Sheen expressed a general desire to be buried in New York was conjecture. In reaching that conclusion, the court failed to give appropriate consideration to the affidavit of Monsignor Franco, and too narrowly defined the inquiry into Archbishop Sheen's wishes. Monsignor Franco stated that Archbishop Sheen had repeatedly expressed his "desire to remain in New York even after his death." Contrary to the motion court's conclusion, a fair reading of this alleged exchange, if it is true, is that Archbishop Sheen wished his body to remain somewhere in New York. Likewise, Monsignor Franco recalled Archbishop Sheen's "fond[ly]" repeating an alleged offer from Cardinal Cooke to be buried at St. Patrick's Cathedral. If those conversations did in fact occur, they could fairly be viewed as reflecting Archbishop Sheen's desire to be buried there.
Monsignor Franco's affidavit did not go unchallenged. In her reply affidavit, petitioner stated that there was "nobody in the world closer to my uncle than me," and that Archbishop Sheen was "a second father to me" and that she "was a daughter to him." Petitioner alleges that she spent a significant amount of time with her uncle in the two years before his death, and contends that they discussed his eventual passing. Petitioner maintains that Archbishop Sheen never told her, or anyone else in the family, of any purported offer to allow him burial at St. Patrick's Cathedral. She stated that if such an offer had been made, Archbishop Sheen "unquestionably" would have shared it with her and the rest of the family, and any bragging as to that fact would have been out of character for her uncle, who was known for his humility. Petitioner also stated that when Cardinal Cooke asked for her permission to inter Archbishop Sheen at St. Patrick's Cathedral, he never mentioned that he had previously made such an offer [*4]to her uncle. Petitioner further challenges the credibility of Monsignor Franco, alleging that he had "greatly exaggerate[d]" the closeness of his relationship with Archbishop Sheen.
The affidavits of Monsignor Franco and petitioner raise issues of fact as to Archbishop Sheen's wishes that are best explored in an evidentiary hearing. Furthermore, it is unclear if Archbishop Sheen's direction in his will to be buried in "Calvary Cemetery, the official cemetery of the Archdiocese of New York" evinces an express intention to remain buried in the Archdiocese of New York, or was merely a descriptive term for Calvary Cemetery. We also note that Archbishop Sheen had long-standing close ties to New York City. He lived in New York for 25 years, hosted his radio and televison shows from there, was consecrated a Bishop of the Archdiocese of New York, and preached at St. Patrick's Cathedral and other New York churches. The petition court did not give adequate consideration to these issues, but instead improperly deferred to the family's wishes, merely because Archbishop Sheen's remains did not end up in Calvary Cemetery, and without a full exploration of Archbishop Sheen's desires.
In concluding that no evidentiary hearing is needed, the dissent understates the significance of Monsignor Franco's affidavit. As previously noted, Monsignor Franco, a long-time close friend and colleague of Archbishop Sheen, recalled that the Archbishop had repeatedly expressed his desire to remain in New York after his death, and "fond[ly]" told the story about Cardinal Cooke's offer of a burial at St. Patrick's Cathedral. Contrary to the dissent's view, these statements cannot be characterized as "vague and speculative."[FN3] The dissent summarily rejects this compelling evidence of Archbishop Sheen's desires merely because these particular sentiments were not expressed in his will. However, the fact that Archbishop Sheen did not repeat these wishes in a testamentary document does not eviscerate their evidentiary value (see e.g. Matter of Conroy, 138 AD2d 212 [3d Dept 1988], lv dismissed 73 NY2d 810 [1988] [ordering a hearing where there was evidence that the decedent had made statements about his burial wishes to his girlfriend and his attorney]).
The dissent relies exclusively on Archbishop Sheen's will in concluding that he did not wish to be buried in St. Patrick's Cathedral [FN4]. The Court of Appeals rejected such a narrow approach in Matter of Currier [Woodlawn Cemetery] (300 NY 162 [1949], supra). In that case, the decedent was interred in a mausoleum in Woodlawn Cemetery, in accord with a directive contained in her will. It was the decedent's hope that, in time, her children would also be interred with her in the mausoleum. The decedent's son, however, desired to be buried in a nearby grave, and her daughters made arrangements for their burial in another state. The children subsequently sought to disinter the decedent's remains and move them to her son's intended [*5]grave. The Court affirmed the grant of the disinterment request, citing the evidence that, notwithstanding the will, the decedent desired to be laid to rest with her family.
In setting forth the facts, the dissent points to a supposed agreement by the late Edward Cardinal Egan to transfer Archbishop Sheen's remains to Peoria if he were to be canonized. This alleged assurance by Cardinal Egan has no relevance to the central issue presented here, namely, the wishes of Archbishop Sheen. There is no indication that, at the time these matters were allegedly discussed, Cardinal Egan had any understanding of Archbishop Sheen's desires. In any event, Cardinal Egan's alleged promise in no way undermines respondents' current position that Archbishop Sheen's remains should not be disturbed.
The fact that respondents did not request a hearing before the petition court does not bar this Court from ordering one now. The dissent cites no authority for the proposition that, in the absence of a specific request below, an appellate court lacks the power to order an evidentiary hearing where it has identified disputed issues of fact (see Briggs v Hemstreet-Briggs, 256 AD2d at 895 ["Where the papers and pleadings in a proceeding pursuant to N-PCL 1510(e) raise a material issue of fact concerning the burial wishes of a decedent, an evidentiary hearing is required"]). Because disputed factual issues exist here, the order on appeal should be reversed and the matter remanded for a hearing on the issue of Archbishop Sheen's wishes. We agree with the petition court that any inquiry into whether Archbishop Sheen will become a Saint calls for undue speculation, and thus it should not be the subject of the hearing.[FN5]
Accordingly, the order of the Supreme Court, New York County (Arlene P. Bluth, J.), entered on or about November 17, 2016, which granted the petition to disinter the remains of Archbishop Fulton J. Sheen and transfer them from St. Patrick's Cathedral in New York, New York to St. Mary's Cathedral in Peoria, Illinois, should be reversed, on the law, without costs, and the matter remanded for a hearing in accordance herewith.
All concur except Webber, J and Kern J.,
who dissent in an opinion by Kern, J.




KERN, J. (dissenting)


I respectfully dissent and would affirm the decision of the petition court.
It is uncontroverted that Fulton J. Sheen was a renowned Archbishop of the Roman Catholic Church. Archbishop Sheen was born in 1895 in El Paso, Illinois and grew up in nearby Peoria, Illinois. He was ordained a priest in Peoria and served his first pastoral assignment there. In 1951, he moved to New York City and was consecrated a Bishop of the Archdiocese of New York.
Petitioner is Archbishop Sheen's niece. She moved to New York from Illinois when she was 10 years old to live with Archbishop Sheen and was, for all intents and purposes, raised by Archbishop Sheen. Archbishop Sheen provided a Catholic education for petitioner through college, and when she was an adult, Archbishop Sheen continued in a parental role, including helping petitioner locate and furnish her first marital home. When petitioner was older, she became Archbishop Sheen's loyal assistant and confidante, she traveled with Archbishop Sheen, she took care of him during illnesses and she was with him in the 48 hours before he died. Now, at almost 90 years of age, petitioner is his oldest living niece.
Archbishop Sheen passed away in December 1979. Three years before he died, Archbishop Sheen purchased a burial plot in Calvary Cemetery, the official cemetery of the Archdiocese of New York. Just five days before he died, Archbishop Sheen executed a will in which he stated as follows:
"It is my will and I direct that my Executor hereinafter named, arrange for my funeral Mass to be celebrated at St. Patrick's Cathedral, New York City, and for my burial in Calvary Cemetery, the official cemetery of the Archdiocese of New York."
Petitioner contends that after Archbishop Sheen's death, Terence Cardinal Cooke of the Archdiocese of New York sought her permission to inter Archbishop Sheen in a crypt in St. Patrick's Cathedral in Manhattan. Petitioner, as Archbishop Sheen's closest living relative, agreed to the request and Archbishop Sheen was interred at St. Patrick's Cathedral in 1979.
In 2002, more than 20 years after Archbishop Sheen's death, Most Reverend Daniel R. Jenky, Bishop of the Diocese of Peoria, Illinois, began the lengthy process of investigating whether Archbishop Sheen had led a life of heroic virtue which could have him declared a Saint of the Roman Catholic Church. Cardinal Edward Egan, on behalf of the Archdiocese of New York, wrote to Bishop Jenky, assuring him that New York had no objection to Bishop Jenky's attempt at canonization of Archbishop Sheen, observing that the Diocese of Peoria was the "ideal diocese" to initiate the cause, given that Archbishop Sheen was a native and served his first pastoral assignment there. Cardinal Egan also agreed that if Bishop Jenky succeeded in canonizing Archbishop Sheen, he would consent to transfer Archbishop Sheen's remains to the Peoria Diocese.
In 2014, the Chancellor for the Peoria Diocese wrote to the Archdiocese of New York and requested that the remains of Archbishop Sheen be disinterred and transferred to Peoria. A shrine to Archbishop Sheen was in the process of being built at the side altar of St. Mary's Cathedral, with Archbishop Sheen's crypt to be located therein. Counsel for the Archdiocese of New York and the Trustees responded and declined to transfer Archbishop Sheen's remains citing Archbishop Sheen's will and the wishes of his family. Specifically, the Trustees argued that Archbishop Sheen left "explicit instructions . . . that he be buried in New York" and that they had consulted with petitioner, Archbishop Sheen's oldest living relative, who stated that, with the exception of a "distant relative Anne Lyons," the family did not want the Archbishop's remains moved. Archbishop Sheen's closest living relatives, including petitioner, have commenced the present proceeding requesting Archbishop Sheen's remains may be moved from St. Patrick's Cathedral to Peoria.
Specifically, in June 2016, petitioner commenced the instant proceeding pursuant to Not-For-Profit Corporation Law § 1510(e) seeking to disinter Archbishop Sheen's remains from the crypt in St. Patrick's Cathedral in New York and transfer them to Peoria, Illinois for interment in the crypt in St. Mary's Cathedral.
Along with her petition, petitioner submitted the affidavits of Bishop Jenky and petitioner's three siblings, all of whom fully consent and support the disinterment and transfer for the following reasons: (i) Archbishop Sheen grew up in Peoria, his parents are buried there and the majority of his next-of-kin continue to reside nearby; (ii) St. Mary's Cathedral is the church where Archbishop Sheen attended services with his family, received his First Holy Communion and was ordained a priest; (iii) Archbishop Sheen frequently visited St. Mary's Cathedral throughout his lifetime; (iv) a shrine to Archbishop Sheen is being built in St. Mary's Cathedral where the burial crypt will be located; and (v) if Archbishop Sheen knew during his lifetime that he would be declared a Roman Catholic Saint, it would have been his wish to be interred at St. Mary's Cathedral.
Respondents answered the petition and objected to the request for disinterment, arguing [*6]that petitioner previously consented to Archbishop Sheen's burial in St. Patrick's Cathedral and that his will directed burial in New York. In support of their answer, respondents submitted the affidavit of Monsignor Hilary C. Franco, who was Archbishop Sheen's assistant from 1962-1967 and remained his close friend thereafter. According to Monsignor Franco's affidavit, Archbishop Sheen "openly expressed [to him] many times his desire to remain in New York even after his death" and was "fond of repeating that Cardinal Cooke had offered him . . . to be buried in the crypt of St. Patrick's Cathedral in New York."
The petition court granted the request for disinterment and transfer of Archbishop Sheen's remains. It found that petitioner had presented good and substantial reasons to disinter Archbishop Sheen's remains and transfer them from St. Patrick's Cathedral to St. Mary's Cathedral in Peoria. The petition court decided that because Archbishop Sheen's stated wish to be buried in Calvary Cemetery was not followed, it would defer to the wishes of the family. In reaching its decision, the petition court found that there was no conflicting evidence regarding Archbishop Sheen's burial wish, which was to be buried in Calvary Cemetery, and rejected as "unsupported speculation" respondents' claim that Archbishop Sheen wanted his remains to stay in New York.
In my opinion, the petition court properly granted the family's request for disinterment and transfer of Archbishop Sheen's remains. "A body may be disinterred upon consent of the cemetery corporation, the owners of the lot, and of the surviving spouse, children, and parents of the deceased" (Matter of Pring v Kensico Cemetery, 54 AD3d 766, 767 [2d Dept 2008], citing N-PCL 1510[e]). Where, as here, consent to disinterment cannot be obtained, permission may be obtained by court order (see N-PCL 1510[e]). "Good and substantial reasons must be shown before disinterment is to be sanctioned" (Matter of Currier [Woodlawn Cemetery], 300 NY 162, 164 [1949]). "[L]ooming large among the factors to be weighed are the wishes of the decedent himself" (id.). Indeed, "[t]he paramount factor a court must consider in granting permission to disinter is the known desires of the decedent" (Brandenburg v St. Michael's Cemetery, 92 AD3d 631, 632 [2d Dept 2012]). Where the decedent's wishes cannot be ascertained, a court must consider the desires of the decedent's next of kin (see id.). An evidentiary hearing is not required unless a material issue of fact is raised as to the burial wishes of the decedent (see Matter of Pring, 54 AD3d at 767 ["since the appellants did not raise a material issue of fact as to the decedent's wishes, the Supreme Court properly determined that no evidentiary hearing was required"]).
In support of its determination the petition court properly found that Archbishop Sheen's burial wishes to be buried in Calvary Cemetery were not followed, that Archbishop Sheen did not express any other wishes with regard to his burial and that petitioner and Archbishop Sheen's other close family members demonstrated good and substantial reasons for the disinterment and transfer of Archbishop Sheen's remains. Such reasons include that Archbishop Sheen's parents are buried only a few blocks from St. Mary's Cathedral in Peoria, that a majority of Archbishop Sheen's next of kin reside nearby, that St. Mary's Cathedral is where Archbishop Sheen was ordained a priest and is a place Archbishop Sheen visited often and that a shrine to Archbishop Sheen is being built in St. Mary's Cathedral where the burial crypt will be located.
Contrary to the majority's decision, an evidentiary hearing is not required as there are no disputed issues of fact as to Archbishop Sheen's burial wishes. The only evidence offered that is contrary to the burial wishes expressed in Archbishop Sheen's will is the affidavit of Monsignor Franco, who affirmed that Archbishop Sheen had repeatedly expressed to him his "desire to remain in New York even after his death" and that he was offered burial in St. Patrick's Cathedral. Given the opportunity to testify at an evidentiary hearing, Monsignor Franco would make the same statements he made in his affidavit, which are insufficient to raise an issue of fact as they are vague and merely speculative as to Archbishop Sheen's burial wishes, as opposed to [*7]the clear and concrete statements made in his will that he wanted to be buried in Calvary Cemetery. If Archbishop Sheen knew of the offer to be buried in St Patrick's Cathedral and wanted to be buried there or if he merely had a desire to be buried somewhere in New York, he could have expressed such desires in his will, which was executed just five days before he died. However, Archbishop Sheen's will did not mention anything about being buried in St. Patrick's Cathedral or a general desire to be buried somewhere in New York. That Archbishop Sheen had long-standing close ties to New York City, was a consecrated Bishop of the Archdiocese of New York, and preached at St. Patrick's Cathedral, does not, as the majority suggest, detract from the fact that Archbishop Sheen's will explicitly stated his desire that he be buried in Calvary Cemetery upon his death.
While, the majority states that an evidentiary hearing may be required even where a decedent expresses his or her burial wishes in a will, for an evidentiary hearing to be required, there must be some evidence of a clear alternate desire by the decedent to be buried elsewhere. The statements made by Monsignor Franco in his affidavit are insufficient to require an evidentiary hearing as they do not demonstrate a clear desire by Archbishop Sheen to be buried somewhere other than in Calvary Cemetery. As a result, Archbishop Sheen's family's wishes should be followed.
Moreover, the statement by the majority that "it is unclear if Archbishop Sheen's direction in his will to be buried in Calvary Cemetery, the official cemetery of the Archdiocese of New York' evinces an express intention to remain buried in the Archdiocese of New York, or was merely a descriptive term for Calvary Cemetery" is belied by the record. Archbishop Sheen's will is clear and specifies Calvary Cemetery as his desired final resting place. The undisputed fact that Archbishop Sheen purchased a plot for himself in Calvary Cemetery in 1976, just three years before his death, is overwhelming evidence that Calvary Cemetery was Archbishop Sheen's desired final resting place.
Finally, as it is undisputed that respondents failed to request an evidentiary hearing before the petition court, and did not pursue such a hearing until they were unsuccessful, their belated request should not be considered.
Order Supreme Court, New York County (Arlene P. Bluth, J.), entered on or about November 17, 2016, reversed, on the law, without costs, and the matter remanded for a hearing in accordance herewith.
Opinion by Richter, J.P. All concur except Webber, J. and Kern, J. who dissent in an opinion by Richter, J.P.
Richter, J.P., Webber, Kern, Singh, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 6, 2018
CLERK



Footnotes

Footnote 1: Respondents allege that in 2014, Bishop Jenky temporarily suspended the Sainthood process. Petitioner alleges that respondents have no interest in pursuing Sainthood.

Footnote 2: Petitioner avers that, at the age of 10, she left her parents and siblings in Peoria to live with Archbishop Sheen in New York, and from that point forward, Archbishop Sheen raised her. Archbishop Sheen continued a quasi-parental role as petitioner grew into adulthood. Petitioner remained a trusted friend and loyal assistant to Archbishop Sheen, was extremely close to him, and helped care for him up until his death. Petitioner's three siblings also maintained regular and close contact with Archbishop Sheen during his lifetime.

Footnote 3: The dissent's conclusion that Monsignor Franco would merely make the same statements at a hearing, without further elaboration, is pure conjecture. It is not known precisely what Monsignor Franco would testify to. In any event, the statements contained in Monsignor Franco's affidavit, in and of themselves, raise issues of fact that should be further explored at a hearing where he will have the opportunity to expand upon his conversations with Archbishop Sheen. Archbishop Sheen's family members, if they so wish, can also expand upon their own affidavits.

Footnote 4: To the extent the will provides evidence of Archbishop Sheen's desires, we note that it contains nothing to indicate that he wanted to be buried in Peoria.

Footnote 5: Respondents did not preserve their arguments that they are exempt from the governing statute, and that petitioner lacks standing.