OPINION OF THE COURT
Dan Lamont, J.
In this reciprocal support proceeding wherein respondent *1033 denies that he is the father of the out-of-wedlock child for whom petitioner is seeking support, the respondent moves that the blood test results be set aside and not received in evidence and that the petition be dismissed upon the ground that the court-ordered blood genetic marker test was not performed by a laboratory duly approved for this purpose by the Commissioner of Health of the State of New York. For the reasons which follow, this court holds and determines that the respondent’s motion must be granted, and that the petition herein must be dismissed without prejudice.
BACKGROUND
This is a reciprocal support proceeding initiated in Volusia County, Florida, wherein petitioner mother seeks support for an out-of-wedlock child born August 19, 1987 — alleged to be the child of the respondent. On July 27, 1988, the respondent appeared pro se before the Hearing Examiner, denied paternity of the child, and requested a blood genetic marker test. The order made and entered by the Hearing Examiner provides in applicable part as follows: "ordered, that said mother, child and alleged father attend before the place so notified by the Florida Department of Social Services on date and at time so notified by the Department of Social Services for the purpose of submitting to such blood-genetic marker test or tests.”
The Florida Department of Health and Rehabilitative Services arranged to have the blood genetic marker test performed by Genetic Design, of Greensboro, North Carolina. The respondent’s blood sample was drawn on September 13, 1988 at Albany Medical Center College, Albany, New York. The blood samples for the mother and child were drawn on September 15, 1988 at Hunter Laboratory, Daytona Beach, Florida. The blood samples were shipped to Greensboro, North Carolina, where the blood genetic marker tests were performed.
The test results were received by the Schoharie County Department of Social Services on October 24, 1988, and were furnished to the Schoharie County Family Court on November 10, 1988. The test results did not exclude respondent, and indicated a 99.61% probability of paternity.
Genetic Design was issued a laboratory permit by the New York State Department of Health effective February 1, 1989, authorizing such laboratory to perform paternity testing (lim *1034 ited to HLA and red blood cell surface antigens) in accordance with article 5, title 5, § 575 of the Public Health Law.
THE LAW
Domestic Relations Law § 37 (19) provides that in any case in which a respondent asserts as a defense that he is not the father of the child "the court of the responding state shall notify the court of the initiating state that the action can be maintained only if the mother and child submit to a blood test as described in section five hundred thirty-two of the family court act” (emphasis supplied).
Family Court Act § 532 (a) provides that the court on the motion of any party "shall order the mother, her child and the alleged father to submit to one or more blood genetic marker tests by a duly qualified physician or by a laboratory duly approved for this purpose by the commissioner of health to determine whether or not the alleged father can be excluded as being the father of the child” (emphasis supplied).
Family Court Act § 532 (b) provides: "Whenever the court directs a blood genetic marker test pursuant to this section, a report made as provided in subdivision (a) of this section may be received in evidence pursuant to rule forty-five hundred eighteen of the civil practice law and rules”.
CONCLUSIONS OF LAW
This court holds and determines that where the Family Court orders a blood genetic marker test pursuant to the provisions and authority of Family Court Act § 532 (a), such test must be conducted by a duly qualified physician or "by a laboratory duly approved for this purpose by the commissioner of health”. The Legislature, by providing that court-ordered blood genetic marker tests must be performed by a duly qualified physician or a laboratory duly approved by the Commissioner of Health, specifically sought to insure the integrity and accuracy of the testing process.
Even in reciprocal support proceedings where only the respondent resides in New York State, the court in the initiating State and the Assistant County Attorney representing the petitioner must arrange to have the court-ordered blood genetic marker tests performed by a duly qualified physician or by a laboratory approved by the Commissioner of Health of the State of New York.
The Assistant County Attorney argues that the only legal *1035 effect of having the test performed by a laboratory not at that time duly approved by the Commissioner of Health is to render the test results not admissible pursuant to Family Court Act § 532 (b) and CPLR 4518, and the Assistant County Attorney therefore produced as a witness G. Lynn Ryals, Ph.D., of Genetic Design, Inc. — who testified regarding the laboratory procedures, and that the test results were prepared and kept in the regular course of business.
This court rejects petitioner’s argument that such court-ordered blood genetic marker test results can be admitted into evidence upon proper authentication as a business record by a competent witness — notwithstanding the fact that the laboratory was not duly approved by the Commissioner of Health of the State of New York at the time of the blood tests.
Since Genetic Design, Inc. was not during September and October of 1988 a laboratory duly approved for paternity testing by the Commissioner of Health of the State of New York, the court-ordered blood genetic marker tests were not conducted pursuant to the express statutory requirements of Family Court Act § 532, and therefore cannot be received in evidence. The remaining evidence being insufficient to establish the paternity of the child by clear and convincing evidence, the petition must be and the same hereby is dismissed without prejudice.
CONCLUSION
The primary purpose and focus of any judicial proceeding— including a paternity proceeding — is a search for the truth. The reliability and accuracy of the human leukocyte antigen blood tissue test upon the issue of paternity has revolutionized the fact-finding process in paternity proceedings and has immeasurably contributed to the search for truth. Three human beings — the child, the mother, and the respondent alleged father — have a legal interest in having the determination of paternity, or dismissal (nonpaternity), made fairly and in accordance with accepted legal procedures and with the aid of reliable scientific evidence.
It certainly now appears that an application for a retesting of the parties would have constituted a much better expenditure of time and money than flying the director of a previously nonlicensed and nonapproved laboratory to New York State to authenticate the blood genetic marker test results— which were simply not performed by an approved laboratory *1036 in accordance with the clear and express statutory requirements of Family Court Act § 532.
Since the dismissal of the within reciprocal support proceeding rests upon purely technical grounds, and certainly does not conclusively establish whether or not the respondent is the father of the child in question, such dismissal is without prejudice.