OPINION OF THE COURT
David Goldstein, J.
Under what circumstances may a defendant in a homicide case obtain an order to exhume the body or remains and for a new autopsy as to the cause of death?
This is a motion by defendant for an order directing the exhumation of the body of his six-day-old child, Anthony Radtke, who is buried without the State, in Nebraska, in order *745 to examine and test the skeletal remains and tissues to determine if they were cut by a sharp instrument or tool or by a dog.
The application is opposed by the District Attorney, who, pursuant to direction of this court, notified the cemetery corporation and the child’s mother, neither of whom have appeared on this application. According to the District Attorney’s office, the mother vehemently opposes the attempt to interfere with her infant son’s final resting place and, although she is without funds to retain private counsel to travel to New York to appear in opposition to this motion, she has advised the District Attorney that she will retain Nebraska counsel to challenge any attempt, in that State, to exhume the remains.
Defendant is charged with murder in the second degree, manslaughter in the first and second degrees, tampering with physical evidence and unlawful disposal of a body without a permit, arising out of Anthony’s death on August 10, 1990. On that date, at about 6:50 a.m., the police were dispatched to defendant’s home to investigate a report of a missing child. Inspection at the scene revealed skull fragments or some sort of bones on the floor, a small diaper with what appeared to be smeared blood and flesh, the baby’s wristband and blood on the rug and on the baby’s sleeper (which was found on the floor, with all but the top snap secured). Photographs of the scene were taken and, after opining that defendant’s large German Shepherd had devoured the baby, the dog was removed to the ASPCA for X rays, after which the animal was put to sleep and an autopsy was performed.
The autopsy, which was videotaped and extensively photographed, concluded that the infant’s cause of death was a skull fracture by a blunt trauma to the head, after which the body had been dismembered and the infant parts ingested by the dog. The autopsy revealed 3 pounds 4 ounces of human flesh inside the dog, which, it was concluded, came from a white infant. The stomach contained "recognizable portions of ribs * * * consistent with infant ribs as well as three thoracic vertebrae joined together with smooth edges at each end.” There was part of a right foot with two toes, a portion of a right hand with two fingers and a portion of a lower extremity, with a foot, great toe and second and third toes. The opening to the stomach contained "gray-white bony tissue as well as pale white skin, and scalp tissue with light brown hair.” The autopsy report recites in detail the specific findings *746 in concluding that the body had been cut by a sharp instrument or tool, including, inter alla, the absence of tissue fragments in the mouth or oral cavity of the dog, the fact that there were no tooth impressions or evidence of tearing of the tissue or bones, which had "smooth articular surfaces, some with clean sharp edges” and no hemorrhage in the soft tissue recovered from the stomach.
In moving to exhume the body and for another autopsy, defendant argues, in conclusory fashion, that certain unnamed experts who have been retained have informed counsel as to the necessity of examining and testing the skeletal remains and tissues "for bite marks” and "to determine if the bones and remains were cut by a sharp instrument or tool or by some other means.” The application is supported solely by the two-page conclusory affirmation of counsel, without submission of any expert opinion, either in the form of a detailed report or affidavit. Notwithstanding the drastic nature of the relief sought, defendant has not, in any way, challenged or called into question any of the findings or conclusions in the Medical Examiner’s report.
An application for disinterment of a body, pursuant to Not-For-Profit Corporation Law § 1510, is one addressed to the court’s discretion, with resolution dependent upon the peculiar facts and circumstances of the case, not on any general "all-inclusive rule” (see, Matter of Currier [Woodlawn Cemetery], 300 NY 162, 164). As the Court of Appeals observed in Currier (supra, at 164): "Good and substantial reasons must be shown before disinterment is to be sanctioned.” This is the operative standard and is based upon equitable principles (Matter of Davis v Congregation Chevra Torah Anshei Radishkowitz, 21 Misc 2d 825, 826). As was stated by Judge Cardozo in Yome v Gorman (242 NY 395, 403): "The dead are to rest where they have been laid unless reason of substance is brought forward for disturbing their repose”.
Most of the reported decisions on the issue arise in a civil context, where a special proceeding has been brought for judicial authorization to remove a body and for reburial in another cemetery or plot, the challenge to the requested relief coming either from the cemetery corporation or another relative of the decedent (see, Weinstein v Mintz, 148 Misc 2d 820 [and cases cited therein]). In the civil cases, the prime inquiry centers upon giving consideration to the expressed wishes of the decedent and those close to him "by ties of love and *747 affection” (Matter of Currier [Woodlawn Cemetery], supra, at 164).
There are but a few criminal cases which have dealt with the issue of exhumation in order to conduct an autopsy, distinct from the civil cases, where the focus is removal and reburial. These have similarly applied the very same "good and substantial reasons” standard.
Thus, in Matter of Band (117 AD2d 597), the Appellate Division, Second Department, affirmed the denial of an application to exhume petitioner’s mother’s body in order to conduct a second autopsy. Five years earlier an autopsy was held, which fixed the cause of death as "asphyxia by unspecified means,” after which petitioner’s father was convicted of the murder of his deceased wife. Notwithstanding petitioner’s challenge to the procedure followed on the original autopsy, the court held, in reliance upon the principle expressed in Matter of Currier (Woodlawn Cemetery) (supra), that good and substantial reasons had not been demonstrated so as to justify a second autopsy, especially considering that (1) the prior autopsy results were considered and resolved by the jury verdict in the earlier criminal proceeding and (2) petitioner had neither argued nor shown that a second autopsy would yield results different from or more conclusive than the first autopsy.
Similarly, in People v Miller (82 Misc 2d 72) Justice O’Gorman denied an application, brought by the District Attorney, to exhume a body in order to conduct an autopsy. There, the decedent had died six days after an automobile accident, following which, Gilbert Miller, the operator of the alleged offending vehicle, was charged with operating a motor vehicle while under the influence of alcohol. The District Attorney sought to exhume the body and to conduct an autopsy in order to establish the cause of death, which, it was said, must be shown to obtain a conviction for vehicular homicide. In denying the requested relief, the court found that a reasonable basis for exhumation had not been shown (82 Misc 2d, at 75); "the court is of the opinion that there has been no showing of the necessity to exhume the body * * * sufficient to justify this serious invasion of the right of the deceased’s widow and children, with the consequent pain and anguish which they would suffer”. This was especially so where, as in Miller, the autopsy was sought to buttress existing evidence, namely, the hospital records and opinions of treating physicians, who could testify as to the cause of death.
*748 Both Matter of Band and People v Miller (supra) are instructive only in terms of the applicability of "good and substantial reasons” as the operative standard. Each decision is distinguishable, factually and conceptually, from the unique situation at issue in this case. In Band, exhumation and a new autopsy were requested five years after a jury verdict, which had fixed the cause of death and criminal responsibility therefor. The autopsy was sought to challenge that verdict and determination. In Miller, the autopsy would buttress existing evidence as to the cause of death for use before and after submission to the Grand Jury. However, since there was other probative evidence, it was concluded that the drastic relief of exhumation was unnecessary under the facts of that case.
Unlike the cited cases, the situation in the present case is quite different, involving, as it does, a request for exhumation during the pendency of a criminal proceeding. Moreover, the reautopsy is sought to challenge or refute the findings and conclusions reached in the original official Medical Examiner’s report. I recognize that the precise type of discovery sought here is not included within the permissible scope of disclosure set forth in CPL 240.20. Nevertheless, in my view, bearing in mind the serious nature of the charges and the degree and extent of punishment which could result following conviction, in a proper case, supported by a sufficient and adequate showing, there could be good and substantial reason found so as to permit exhumation and a further autopsy, albeit during the pendency of a criminal proceeding.
As is assumed by defendant, however, this does not mean that, in every criminal case, a defendant is entitled to such relief for the mere asking. Any request for exhumation or disinterment should be carefully scrutinized. It must appear that there is a real and legitimate basis to conduct a further autopsy, especially taking into account the overriding concern of surviving next of kin that those laid to rest should be permitted to rest in peace. The operative standard requires exercise of the court’s discretion. In any case, balanced against defendant’s real and actual need for the requested relief, consideration must be given to the pain and distress to survivors which would accompany any order permitting exhumation and an autopsy. Such a balancing approach, in my view, is consistent with and required by the equitable principles upon which the "good and substantial reasons” standard is founded.
Applying these principles to this case, on this record, insuffi *749 cient cause has been shown to order disinterment for a further autopsy. As noted, the record is devoid of any proof to in any way call into question the findings and conclusions contained in the Medical Examiner’s report (see, Matter of Coleman [Warfield], 2 Misc 2d 615). The speculation by counsel in his supporting affirmation lacks probative value and is inadequate for that purpose.
Taking into account the extreme pain and anguish which would result to the surviving next of kin were exhumation and an autopsy to be ordered, an application for such relief should impose upon the moving party a burden of establishing, by extrinsic evidence, that there is a real and legitimate basis for disinterment. This is especially so in this case, where, it is alleged, there were most unusual facts surrounding the child’s death. This is also highlighted by the fact that the autopsy was videotaped and at least 40 color photographs were taken, of both the crime scene and the autopsy, which, as has been stated at pretrial conferences, were examined and studied in depth by defense experts who will testify at trial.
Under such circumstances, in order to obviate the inescapable conclusion that the requested reautopsy amounts to no more than a fishing expedition, it was incumbent upon defendant to submit, in support of the application, some opinion as to the cause of death and the ingestion of the body parts. In the absence of sufficient substantiating proof, defendant has not challenged either the autopsy conclusion of postmortem disarticulation by a sharp instrument or tool, or the objective findings set forth in the report which support that opinion, including, inter alla, the absence of evidence of hemorrhage, tooth impressions or tearing of tissue which was recovered; the presence of smooth surfaces on the bones, some with clean, sharp edges; the absence of tooth impressions on the skull fragments which were found on the bedroom rug; and the position and condition of both the infant’s sleeper and disposable diaper, the former with all but the top snap still in place, the latter with only slight bloodstaining and with the adhesive flaps "together in such a manner as to indicate that the diaper had been fitted to conform to an infant’s physique.”
Upon full and careful consideration of the relevant issues, I find that defendant has failed to sustain his burden of demonstrating "good and substantial reasons” to support the requested relief of exhumation and a reautopsy. In my view, the absence of any substantiating proof is dispositive and, apply *750 ing equitable notions of fairness and decency, disinterment for a further autopsy is not warranted here.
Accordingly, on this record, the application for an order directing the exhumation and reautopsy of the decedent’s remains is denied in all respects.