OPINION OF THE COURT
Bruce M. Kaplan, J.
Respondent, K.A., also known as K.D., has moved to dismiss the paternity petition brought by petitioner S.L.B.
In the alternative, respondent sought an order, pursuant to Family Court Act § 532, for a redrawing and retesting of the blood of the parties and child by a laboratory other than Roche Biomedical Laboratories (Roche). He further requested that petitioner and one "D.” W. be ordered to submit to examinations before trial. Petitioner cross-moved to have respondent submit to an examination before trial and for DNA testing on the parties and child.
The gravamen of respondent’s motion is the undisputed fact that there was a discrepancy in the results of two blood grouping tests performed on petitioner’s child, C.B.
It would appear that after this proceeding was initiated but prior to joinder of issue, petitioner anticipated that respondent might claim that D.W., a former paramour of petitioner, was the likely father of C. Accordingly, petitioner arranged for herself, C. and Mr. W. to submit to blood grouping tests performed by Roche Biomedical Laboratories.
After reviewing the test results, Roche concluded that Mr. W. was excluded as the father of C. It based this conclusion on two discrete factors. The first was that petitioner and D.W. lacked the red cell antigen S which is a component of the MNSs system, while finding the S antigen present in the child. It independently excluded Mr. W. because both he and petitioner lacked the leukocyte antigen A32, which was present in the child.
After joinder of issue on March 15, 1991, blood grouping tests were performed on petitioner, C. and respondent. When the results were tabulated neither C. nor respondent were found to have the red cell antigen S although both possessed haplotype A32 W53 which was not present in petitioner’s genotype.
This discrepancy led to the instant motion with respondent claiming that paternity could never be proved by clear and convincing evidence.
*49 A. THE MOTION TO DISMISS IS DENIED
The motion to dismiss is denied, respondent having advanced neither common-law nor statutory authority in support of his seeming contention that any discrepancy in blood testing precludes a finding of clear and convincing evidence.
B. THE PARTIES AND CHILD SHOULD BE RETESTED BY ROCHE
Although respondent requested, in the alternative, that the court order a redraw by a laboratory other than Roche, he fails to specify which laboratory he would prefer in its stead.
It is clear from an examination of the motion papers that expert testimony will be vital in this matter. It will doubtless focus on how C. was found to possess the red cell antigen S, when originally tested, and found not to possess it on the subsequent test.
If C. does possess the S antigen, petitioner would have to demonstrate how it is possible under the laws of genetics for a child possessing the red cell antigen S, and whose mother lacks that antigen to be fathered by the respondent who also lacks that antigen.
It is also possible, and this issue may not be resolved on papers, that either petitioner, respondent or C. may have a weakly expressed S antigen. This question must abide the results of the retesting.
The possible presence of a weakly expressed S antigen was suggested in a September 25, 1991 letter from Drs. Karl-Hans Wurzenger and Clifford R. Harris, associate directors of Roche’s Department of Paternity Evaluation. They recommended that there be retesting of the parties, and the child, in which Roche would perform nonroutine MNSs system analysis.
Roche also agreed to pay for the cost of additional testing, and to provide expert testimony at no charge to the petitioner.
This procedure is ordered since respondent’s objection to Roche’s continued participation is grounded on a speculative belief, unsupported by factual predicates, that Roche would perform a less than objective analysis.
C. DNA TESTING SHOULD BE PERFORMED ON THE PARTIES AND CHILD
In petitioner’s answering papers, a request for DNA testing was made. Since this court has every desire to have the most *50 exhaustive quantum of probative information available, that request is granted.
Respondent has opposed the request. His position lacks merit. In support of his position, respondent cites People v Castro (144 Misc 2d 956 [Sup Ct, Bronx County 1989]). Unfortunately he misapprehends its holding. In that case Judge Gerald Sheindlin held that DNA identification evidence is admissible when the tests are performed under adequate conditions and monitored with appropriate safeguards.
In Castro (supra) the DNA test results were not admitted because of a failure to comply with generally accepted scientific techniques, as well as to explain, appropriately, the ramifications of decay and contamination. There was a thorough going approval of the principles underlying DNA testing.
In the instant situation, the blood would be drawn under strictly controlled laboratory conditions, and the chain of custody meticulously documented. In addition, respondent would be granted the opportunity to thoroughly explore, inter alla, the validity of the mechanics of the testing procedure, the chain of custody, and the statistical basis for the conclusions reached.
Respondent quibbles that the holdings in King v Tanner (142 Misc 2d 1004 [Sup Ct, Westchester County 1989]) and Matter of Baby Girl S. (140 Misc 2d 299 [Sur Ct, NY County 1988], affd 150 AD2d 993, affd 76 NY2d 387) were not paternity petitions. This fact is irrelevant for they, without contradiction, recognize that DNA testing is a blood genetic marker test. It is likewise beyond dispute that Family Court Act § 532 states that the court has the authority to order the parties and child to submit one or more blood genetic marker tests.
A somewhat similar situation was addressed in Matter of Shepherd v Skeete (169 AD2d 626 [1st Dept 1991]). In that case, the Appellate Division reversed the denial of a motion to vacate a paternity finding where, postjudgment, respondent submitted to a series of blood genetic marker tests which found that he had a BW35 leukocyte antigen instead of the BW53 as reported in the original testing.
It held the prior order of filiation in abeyance, and remanded for a retest which would resolve the obvious discrepancy between the two results.
It noted that the statute authorized one or more blood genetic marker tests, and viewed as immaterial whether it authorizes different kinds of tests, or a retesting for accuracy. *51 Since Shepherd (supra) found no inhibition to ordering a different kind of genetic marker test than HLA, it impliedly approves DNA testing.
Respondent also contends that a specific legislative enactment is a requisite to ordering DNA testing under Family Court Act § 532. This point lacks merit. The foundation of respondent’s argument lies in the fact the Legislature failed to act on a proposed amendment to Family Court Act § 532 which would particularize the DNA test in the category of blood genetic marker tests.
Respondent’s argument is bereft of logical cohesion. His reply affidavit states that "if the Legislature believes that FCA § 532 as it currently reads granted the Court the power to order DNA testing, there would have been no need to seek to amend the statute. Since the proposed amendment was not enacted in the law, FCA § 532 must be construed as not authorizing DNA testing.”
Respondent’s reasoning is flawed. If the Legislature believed that the court had the power to order a DNA test, because it is, beyond dispute, a genetic marker test, it rightly rejected the proposed amendment as superfluous.
The Legislature is not a monolith, and most likely there is not universal agreement on the ambit of Family Court Act § 532. Legislators may not be prohibited from seeking change, but the rejection of the proposed amendment is as much consistent with the belief by a majority of the Legislature that such a proposed amendment was not necessary, as it is with the belief that a) such an amendment would be necessary, and b) should be rejected because the Legislature did not wish DNA testing to be available in paternity proceedings.
The former conclusion is more likely based on a history of Family Court Act § 532.
A seminal change in paternity proceedings occurred with the promulgation of Laws of 1981 (ch 9). This law removed the bar to the receipt into evidence of test results which failed to exclude a given respondent as the father of the child. HLA test results were permitted to be introduced to aid in the determination of paternity. However, the ability to introduce these test results was problematic because it was not until Laws of 1982 (ch 695) that the Family Court Act and the CPLR were amended to provide that blood grouping tests, and HLA test results and reports might be received into evidence as prima facie evidence of the facts contained therein if *52 properly certified and authenticated. A further amendment by Laws of 1983 (ch 311) permitted certification by laboratories, the primary source of such tests and results, and qualified physicians.
Other problems still remained. The advances in hematology extended beyond the specifically authorized HLA testing, and problems arose where such other sophisticated blood screenings as RBC enzyme and RBC serum protein testing were routinely performed along with the standard red blood cell testing and HLA testing. The failure to include those procedures specifically in the statute defeated their reception into evidence. (Matter of Lorraine M. v Linwood M. S., 115 Misc 2d 922 [Fam Ct, NY County 1982].)
It would appear that rather than perpetuate a series of piecemeal annual amendments, the Legislature determined to draft a comprehensive statute sufficiently broad in scope to encompass procedures that were presently being performed on a routine basis as well as such new procedures which might be developed and found generally accepted as reliable by the relevant scientific community. (People v Middleton, 54 NY2d 42; Frye v United States, 293 F 1013 [DC Cir 1923].)
The result of that endeavor is contained in Laws of 1984 (ch 792). This broadly drafted statute instead of speaking to individual procedures, spoke to genetic marker tests, and with respect to other blood tests particularized the ones routinely conducted while stating that it was without limitation to them.
Under these circumstances, and having drafted a comprehensive statute, it is understandable that the Legislature did not feel that an additional amendment was necessary.
D. RESPONDENT MAY DEPOSE PETITIONER BUT NEITHER RESPONDENT NOR ”D” W. MAY BE DEPOSED
Respondent has sought the examination before trial of both the petitioner, and "D.” W., while petitioner has sought examination before trial of respondent.
The application to depose the petitioner is granted. (Matter of Maureen E. O’H. v Nicholas C., 65 AD2d 491 [2d Dept 1978].) However, the court adopts the constructive suggestion of petitioner that such deposition be held in abeyance pending the receipt of the blood grouping tests.
*53 Petitioner had sought to take the deposition of the respondent. That application is denied since Family Court Act § 531 provides that although the alleged father is competent to testify, the respondent shall not be compelled to testify.
While that provision remains in effect, its potency was substantially compromised by Matter of Commissioner of Social Servs. v Philip De G. (59 NY2d 137). The Court of Appeals held since filiation proceedings are civil in nature, a failure of a respondent to testify permits the trier of fact to draw the strongest inference against him that the opposing evidence in the record permits.
Family Court Act § 531 also provides, and without diminution by common-law construction, that if a respondent shall offer testimony of access by others at or about the time charged in the complaint, that the testimony would not be competent or admissible except when corroborated by other facts and circumstances tending to provide to prove such access.
This cuts against taking the deposition of D.W., a person excluded by test findings untainted by the inconsistencies surfaced by the testings of the child. It is hard to conceive that his deposition would be relevant except on this issue.
As respondent’s counsel correctly points out, the CPLR is applicable in the absence of a specific provision in the Family Court Act. Under CPLR 3103, the court on its own initiative may make a protective order with respect to the use of any disclosure device. Since respondent fails to advance the specific reason for seeking the deposition of this nonparty witness, the court will at this juncture enjoin such a request. Of course, respondent is not foreclosed from subpoenaing Mr. W. to testify at the trial.
Accordingly, the motion is granted to the extent blood tests of the parties and the child are ordered and said testing shall include DNA testing and shall be performed by Roche Biomedical Laboratories.
In addition, the application to take the deposition of the petitioner is granted, if apposite, following of the receipt of the result of the blood grouping tests.
The matter is adjourned to April 14, 1992, Part 8.