OPINION OF THE COURT
Bruce M. Kaplan, J.
Respondent, by order to show cause, dated March 18, 1992, has moved for renewal of his motion to exclude DNA testing of the parties and the child C., and that upon granting of *459 renewal the court amend its prior order to the extent of deleting the provision for DNA testing of the parties and child by Roche Biomedical Laboratories, Inc. (Roche).
Thereafter, petitioner’s counsel submitted an affirmation in opposition and respondent’s counsel filed a reply affirmation dated April 22, 1992.
After consideration of these papers, and after being apprised of a recent policy shift by the New York State Department of Health, the court adheres to its order of January 13, 1992 which directed that the parties and child submit to DNA testing by Roche.
The court’s decision and order of January 13, 1992 construed Family Court Act § 532 and determined that DNA testing was a blood genetic marker test. (153 Misc 2d 47.)
It analyzed the case of Matter of Shepherd v Skeete (169 AD2d 626 [1st Dept 1991]) impliedly to approve DNA testing.
The court’s earlier decision begged a question of singular import: that the New York State Commissioner of Health had duly approved Roche for the purpose of conducting DNA testing. It did so in the absence of any assertion by petitioner’s counsel that Roche had been duly approved, or by respondent’s counsel that it had not.
The admissibility of blood genetic marker tests in paternity proceedings is solely determined by reference to Family Court Act § 532. The parties and child can be required to submit to a test at a given laboratory only if the laboratory is duly approved by the New York State Commissioner of Health.
In the papers submitted no information was brought to the court’s attention with respect to whether or not Roche had been duly approved by the Commissioner of Health. Indeed, in petitioner’s affirmation in opposition there is no claim that Roche is duly approved. Rather she contends that the failure to bring to this court’s attention that circumstance at the time of the original submissions precludes this court from acting upon this reality even though she does not dispute its validity.
It is both uncontrovertible, and irrelevant that DNA test results have been admitted into evidence in Matter of Baby Girl S. (140 Misc 2d 299 [Sur Ct, NY County 1988], affd 150 AD2d 993 [1st Dept 1989]) and King v Tanner (142 Misc 2d 1004 [Sup Ct, Westchester County 1989]). Since these cases were not paternity proceedings, they were not governed under the specific statutory mandate of Family Court Act § 532.
It would be ironic if DNA test results utilizing blood drawn *460 under meticulously controlled laboratory conditions were not admissible in paternity suits even if the proper procedures and methodology are demonstrated, but are admissible upon a similar showing in a criminal prosecution where the quality of the sample is far less pristine. (People v Castro, 144 Misc 2d 956 [Sup Ct, Bronx County 1989].)
This motion underscores the lamentable fact that at present no laboratory is approved to perform DNA testing in New York State pursuant to Family Court Act § 532. Fortunately steps have been undertaken to rectify the problem.
An informal conversation with Judge Gerald Sheindlin, the author of People v Castro (supra), revealed that Governor Cuomo appointed a DNA Advisory Committee to promulgate standards for approving laboratories to perform DNA testing. The Committee had been moribund due to a lack of sufficient funding, and is not expected to meet until September. As a result, it has not submitted any recommendations for approval standards.
This impasse flies in the face of logic and the enlightened search for knowledge. Until a mechanism for approving laboratories is emplaced, there is a manifest need to amend Family Court Act § 532, to broaden the basis for admission of DNA testing in paternity proceedings. It is respectively suggested to the legislative leaders that admissibility of DNA test results be conditioned on compliance with either the mandate suggested in People v Castro (supra); a somewhat less stringent standard articulated in Frye v United States (293 F 1013 [DC Cir 1923]); or the test recently articulated by the Second Circuit in United States v Jakobetz (955 F2d 786 [2d Cir 1992]).
We are at a historic time when the prospect of singularly enhanced certainty in identification procedures based on DNA testing augurs a seminal change in the criminal justice system. Understandably this has occasioned a vigorous debate in the scientific and legal communities, the ramifications of which impact paternity testing.
Shortly after the decision in United States v Jakobetz (supra), a panel under the auspices of the National Academy of Sciences and the National Research Council issued a report on DNA Technology in Forensic Science.
An April 14, 1992 article in the New York Times opined that the report made certain conclusions and recommendations restricting the use of DNA test results in court proceedings. It was followed by an April 15, 1992 article in which the *461 chairman of the panel as well as several of its prominent members specifically controverted the article, and reaffirmed their conclusion that utilization of present DNA testing was recommended pending the promulgation of further standards.
All of this underscores the necessity for the promulgation of standards. This has led Governor Cuomo to propose legislation for the creation of a Forensic Science Review Panel in the Division of Criminal Justice Services that would develop minimum standards and regulations for accrediting laboratories to analyze DNA specimens.
Respondent’s strongest argument for excluding the direction for DNA testing was predicated on a May 30, 1990 letter from Peter J. Millock, Esq., General Counsel of the New York State Department of Health (DOH) which stated that DOH had not approved any laboratory to perform DNA testing.
This letter formed the basis for the decision of Judge Abrams in Brielmeier v Moloney (NYLJ, Dec. 21, 1990, at 26, col 1 [Fam Ct, Suffolk County]) which countermanded a direction for DNA testing.
Since the events delineated above had occurred subsequent to Brielmeier v Moloney (supra), the court sua sponte contacted DOH to ascertain whether the May 30, 1990 position represented current policy.
I was informed that the policy was under review, and on June 30, 1992 I was provided with a copy of a June 29, 1992 communication from Mr. Millock indicating that DOH had initiated the development of laboratory review standards for DNA testing with the possibility of approving a limited number of laboratories prior to the end of 1992.
It went on to state: "Consequently, notwithstanding the cases cited in your letter, the Department of Health takes the position that the admission of DNA test results from a laboratory approved by the Department to perform 'paternity tests’ is inappropriate unless the Court conducts an independent examination of the techniques employed in the laboratory, the comparison population base utilized for statistical purposes and the educational and experiential background or the person performing the analysis.”
In light of these recent developments, respondent’s position is untenable and the court adheres to its original order.
Since the admissibility of the DNA test results must abide the completion of the court’s independent examination, the test results must necessarily be furnished to the court.
*462 The court must take umbrage at the respondent’s counsel suggestion that the court would be unable to compartmentalize its function as trier of fact, from that of arbiter of the law with respect to being privy to the DNA test results. Such an exercise is inextricably intertwined with the court’s operation and occurs frequently in a variety of contexts.