OPINION OF THE COURT
Renee R. Roth, S.
Seeking to establish standing to contest the admission to probate of the will of Sidney Janis, Robin Ladas, an alleged nonmarital child, moves to exhume decedent’s body for the purpose of conducting deoxyribonucleic acid (DNA) testing, which she contends will prove that Mr. Janis was her father. Robin is not a beneficiary under the propounded instrument, which disposes of decedent’s estate to his two marital sons and their issue. Robin is, however, the income beneficiary and presumptive remainderman of an inter vivas trust established by decedent.
EPTL 4-1.2 lists four ways in which an alleged nonmarital child may establish paternity for purposes of inheriting from his or her father. The parties rely on clause (D) of subdivision (a) (2) (hereinafter clause [D] or the quoted clause), which provides that such a child may inherit if "a blood genetic marker test had been administered to the father which together with other evidence establishes paternity by clear and convincing evidence” (emphasis added).
Claiming that "other evidence” exists in the form of testimony from various witnesses, Robin seeks a DNA test of testator’s remains to establish by "clear and convincing evidence” that he is her father. The preliminary executors, however, contend that the quoted clause, by its terms, does not permit postdeath blood testing. They also claim that Robin has failed to demonstrate sufficient reason for exhumation.
The issue has never been considered or decided in New York. However, in such regard, the legislative history of the quoted clause is most significant. At the same time that clause (D) was added to EPTL 4-1.2 (L 1987, ch 434, § 2), a new section 519 was added to the Family Court Act (L 1987, ch 434, § 1, eff July 27, 1987). For the most part, the statutes parallel each other. Family Court Act § 519 was purposed to allow continuation and, in some circumstances, commencement of a paternity proceeding after the death or incapacity of the putative father. Although enacted to correct certain *1001 inequities, section 519 was nevertheless designed to prevent "false, opportunistic claims” from being made against the putative father’s estate (see, Goodhue, Mem in support of S. 3526 and A. 5797, Bill Jacket, L 1987, ch 434).
To effectuate its purposes, the statute states the circumstances under which paternity may be established after the putative father’s death. As mentioned earlier, they parallel the provisions of EPTL 4-1.2. Most relevant to the instant case is subdivision (c) of Family Court Act § 519, which provides that a paternity proceeding may be commenced where "a blood genetic marker test had been administered to the putative father prior to his death” (emphasis added).
Robin contends that clause (D) permits postdeath blood genetic marker testing because it does not contain the above-emphasized language of Family Court Act § 519 (c) limiting such testing to living persons. However, she ignores the clear past tense of the relevant clause in clause (D) (the child may inherit if the test "had been administered to the father”). Furthermore, the reading proposed by Robin would make these two statutes inconsistent when it is clear that they were enacted concurrently and intended to accomplish the same purpose. It is not at all likely that the Legislature would make provision for paternity proceedings in the Surrogate’s Court inconsistent with provision for such proceedings in the Family Court.
Based upon the foregoing, the quoted clause is construed to be consistent with Family Court Act § 519, so that an application to establish paternity may be made only where a blood genetic marker test had been administered to decedent during his lifetime.
It is observed that, notwithstanding this interpretation of clause (D), postdeath genetic marker tests might be admissible under clause (C) of EPTL 4-1.2 (a) (2), which allows paternity to be "established by clear and convincing evidence”. (Cf., Alexander v Alexander, 42 Ohio Misc 2d 30, 537 NE2d 1310, appeal dismissed 54 Ohio App 3d 77, 560 NE2d 1337; Estate of Greenwood, 402 Pa Super 536, 587 A2d 749; Batcheldor v Boyd, 108 NC App 275, 423 SE2d 810.) Although nothing in clause (C) prohibits postdeath blood testing, public policy considerations may warrant such a limitation (see, Lalli v Lalli, 439 US 259). Moreover, it is possible that clause (D) preempts clause (C) with respect to blood genetic marker tests.
In any event, the court need not address the question *1002 because the record indicates that Robin has access to ample proof of the type customarily submitted to prove paternity under clause (C) of EPTL 4-1.2 (a) (2). Furthermore, the uncertainty that surrounds the results of the DNA test in this instance precludes the issuance of an order for exhumation.
In this respect, we turn briefly to the law governing exhumation. Not-For-Profit Corporation Law § 1510 (e) permits exhumation upon the consent of the decedent’s surviving spouse, adult children and parents and the corporation of the cemetery where the body is interred. Court intervention is necessary only where consent is not unanimous. Under this statute, jurisdiction is ordinarily limited to the courts of the county where the cemetery is located (in this case, Queens County). Here, exhumation is requested in order to obtain evidence to be proffered in a hearing before this court and, accordingly, the parties have presented the issue in this forum. The cemetery has appeared and does not object to the exhumation if authorized by this court.
Where court intervention is necessary, exhumation rests within the court’s sound discretion based upon the facts and circumstances of each case (Matter of Currier [Woodlawn Cemetery], 300 NY 162, 164). In Currier (supra, at 164), the Court of Appeals established the standard to be applied in such cases as follows: "The quiet of the grave, the repose of the dead, are not lightly to be disturbed. Good and substantial reasons must be shown before disinterment is to be sanctioned” (citations omitted).
This is the rule where exhumation is for the purpose of reburial. In such cases, in determining whether "good and substantial reasons exist”, our courts consider decedent’s wishes, if expressed, or those of close family members (see, Yome v Gorman, 242 NY 395; Matter of Conroy, 138 AD2d 212, lv dismissed 73 NY2d 810; Matter of Elman, 152 Misc 2d 656; Weinstein v Mintz, 148 Misc 2d 820). An additional requirement is found in criminal cases where a defendant seeks exhumation for the purpose of having an autopsy performed on the victim (Matter of Band, 117 AD2d 597; People v Radtke, 152 Misc 2d 744; People v Miller, 82 Misc 2d 72). In such cases, "actual need” or a "real and legitimate basis” is necessary to overcome the objections of the next of kin (People v Radtke, supra).
The standard used in criminal cases would appear to be applicable to the instant application insofar as Robin is seek *1003 ing exhumation in order to gather evidence for trial. Robin, however, has not established entitlement to exhumation under the above discussed decisions.
The scientific reliability of the DNA testing Robin’s experts propose to conduct is less than certain. They acknowledge that there may not be sufficient DNA material to perform either the traditional DNA testing by restriction fragment length polymorphism technology, which has been accepted as scientifically reliable (People v Wesley, 140 Misc 2d 306, affd sub nom. People v Bailey, 156 AD2d 846), or the amplified fragment length polymorphism technology, which has never been used in New York.
A further complication is that, pursuant to Family Court Act § 532, genetic marker tests may be admitted into evidence as proof of paternity without further inquiry only where tests were conducted at an approved laboratory (see, Tammy W. v Newton O., 145 Misc 2d 1032; Brielmeier v Moloney, NYLJ, Dec. 21, 1990, at 26, col 1; Geiger v Cady, Fam Ct, Suffolk County, Sept. 13, 1990, index No. P-655-90, slip opn, at 1). But the Department of Health has not certified any laboratory for DNA testing, thus necessitating a case-by-case inquiry as to the admissibility of even the more conventional DNA testing (see, Matter of S.L.B. v K.A., 153 Misc 2d 47, order adhered to 155 Misc 2d 458).
Based upon all of the foregoing, the application for exhumation is denied. A date for a hearing with respect to contestant’s claim that decedent was her father shall be fixed in the order to be submitted herein on notice.
Finally, in lieu of an inventory of assets, the preliminary executors shall file, within 10 days of service of the order to be entered herein, an affidavit as to the value of the gross estate.