Wanda HOWELL o/b/o, Shalina
HOWELL, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 01 Civ. 7903(VM).

United States District Court,
S.D. New York.

May 28, 2003.

Wanda Howell, Bronx, NY, pro se.

## DECISION AND ORDER

MARRERO, District Judge.

Wanda Howell ("Howell"), on behalf of her daughter, plaintiff Shalina Howell ("Shalina"), brings this action to challenge the decision of the Commissioner of Social Security (the "Commissioner") that Shalina was not entitled to surviving child's insurance benefits (the "Benefits") under the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, because she did not demonstrate that she was the surviving child of the deceased wage earner, Karl L. Harris ("Harris"), within the meaning of the Act. The Commissioner filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is GRANTED.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

Howell filed an application for the Benefits on behalf of Shalina with the Social Security Administration (the "SSA") on February 6, 1998. Her Application was denied, and she requested a hearing (the "Hearing"), which was conducted before Administrative Law Judge Louis V. Zamora (the "ALJ") on May 3, 1999. Howell was not represented by counsel at the hearing. The ALJ issued a decision on November 6, 1999 (the "SSA Decision") finding that Shalina was not entitled to the Benefits because there was insufficient evidence to lead to the conclusion that she was Harris's daughter. Howell sought administrative review from the SSA's Appeals Council, and the SSA Decision became final when the Appeals Council denied her requested review on May 9, 2001.

### B. FACTUAL RECITATION

According to Howell, she lived across the street from where Harris worked, and as a result the couple met at some point before the spring of 1986. Howell alleges that this relationship resulted in the conception of Shalina, who was born on November 15, 1986 at St. Luke's Roosevelt Hospital in Manhattan. Shalina's birth certificate lists Howell as the mother, but does not list anyone as the father.

Following Shalina's birth, the record is unclear as to the extent of the purported relationship between Harris and Howell. Howell submitted for the record a copy of an August 22, 1991 check (the "Check") for seventy-five dollars made out to harris—who was an employee of the New York Times—from the New York Times Employees Federal Credit Union. Howell contends that the Check was one in a series of payments Harris made to Howell as child support for Shalina, but admits that all other payments were made in cash. Howell never deposited the Check.

The record contains several documents which demonstrate that Howell and Shalina believed Harris was Shalina's father. One such document consists of a handwritten note to Harris from Shalina and Howell dated June, 1994 that says "Daddy" on it. Two other documents—a Pupil/Parent Survey, dated October 2, 1998, and an application for membership to the Madison Square Boys & Girls Club, dated November 9, 1998—list Harris as Shalina's father, but were both prepared after Harris's death and consequently are signed only by Howell.

According to documents submitted by Howell, she attempted to institute paternity and support proceedings against Harris by filing a Statement of Alleged Paternity on November 4, 1991 with the Human Resources Administration Office of Child Support Enforcement. Later, on March 14, 1995, Howell filed a petition under Article 5 of the Family Court Act alleging that Harris was Shalina's father. Harris never appeared in court on this matter, and consequently the petition was eventually dismissed without prejudice by the Family Court on February 6, 1997 because the allegations in the petition could not be established.[1]

The record also contains undated correspondence from the City of New York (the "City") informing Howell that her children were no longer receiving public assistance, but that the City's Support Collection Unit Services Office would continue to attempt to obtain an order of support and establish paternity against Harris on behalf of Shalina. To assist in this action, the City requested that Howell report to a local borough office within thirty days to discuss what further action could be taken. A second letter from the City to Howell, also undated, noted that Howell had not responded within the requested thirty-day period, and consequently informed Howell the child support enforcement case against Harris would be closed.

Although Howell made several attempts as noted above to confirm that Harris was the father of Shalina, Harris consistently made no acknowledgment of such paternity in his tax returns and applications for employment, and never took any action to care for Shalina, such as assisting with her medical appointments or making her a beneficiary of his insurance policy. On October 25, 1994, Harris applied for disability insurance benefits with the SSA, and affirmed—despite the clear warning that a false affirmation under such application was a federal crime—that he had no children who were eligible for social security benefits.

On January 12, 1996, Harris died of cardiac arrest. His death certificate lists Dorothy Harris as his wife and informant on the death certificate. Two years after Harris's death, Howell filed for the Benefits as described in Part I.A above.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

■ Appellate review in a case of this kind is limited to a determination of whether the ALJ's findings "are supported by substantial evidence, considering the record as a whole." *Segovia v. Heckler,* 768 F.2d 596, 597 (5th Cir.1985); *see also Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). Thus, "[i]f the court finds that there is substantial evidence to support the Commissioner's decision, that decision must be upheld . . . ." *Martinez v. Massanari,* 242 F.Supp.2d 372, 375 (S.D.N.Y. 2003); *see also Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir.1990).

### B. *DETERMINATION OF CHILD'S INSURANCE BENEFITS*

Pursuant to section 202(d)(1) of the SSA—codified at 42 U.S.C. § 402(d)(1)—the child of a deceased wage earner is entitled to Social Security benefits if the

---

**1.** The Commissioner claims that the dismissal occurred on December 6, 1997, but the Court reads the document as being dated "2/6/97" rather than "12/6/97." Regardless, the exact date does not affect the Court's analysis or ruling.

child is unmarried, under 18 years of age and was dependent upon the deceased wage earner at the time of death. In determining whether an applicant is the child of a wage earner, the intestacy laws of the state in which the wage earner was domiciled at the time of death are to be applied. *See* 42 U.S.C. § 416(h)(2)(A).

However, if an applicant does not qualify as the wage earner's child pursuant to the state's intestacy laws, the Act sets forth alternative criteria under which such applicant may qualify. *See* 42 U.S.C. §§ 416(h)(2)(B) and 416(h)(3)(C). Under the Act, an applicant shall be deemed to be the child of a wage earner if the wage earner and the child's mother went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment, would have been a valid marriage. *See* 42 U.S.C. § 416(h)(2)(B). Alternatively, an applicant who is the child of a wage earner may qualify if the wage earner had acknowledged in writing that the applicant is his child, had been ordered by a court to contribute to the applicant's support, or had been decreed by a court to be the father of the child, and such acknowledgment, court decree or court order was made before the death of said individual. *See* 42 U.S.C. § 416(h)(3)(C)(i). A final alternative permits establishment of paternity by other satisfactory evidence if the wage earner was either "living with or contributing to the support of the applicant" when he died. 42 U.S.C. § 416(h)(3)(c)(ii). Under any of the standards discussed above, Shalina fails to make a convincing case to prevent judgment on the pleadings in favor of the Commissioner.

1. *New York's Intestacy Laws*

■ According to Harris's death certificate, at the time of his death he was domiciled in New York. (*See* Certificate of Death, attached as Exhibit 11 to Notice of Filing of Supplemental Record, dated August 13, 2002 ("Supp.Record").) Under New York law, a non-marital child can inherit from her father if: (1) a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity; (2) the mother and father of the child have executed an acknowledgment of paternity, which has been filed with the registrar of the district in which the birth certificate has been filed; (3) the father of the child has signed a notarized and witnessed instrument acknowledging paternity that is filed within sixty days from the making thereof with the state department of social services; (4) paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own; or (5) a blood genetic marker test had been administered to the father which together with other evidence establishes paternity by clear and convincing evidence. N.Y. Est. Powers & Trusts Law § 4–1.2(a)(2) (McKinney 1998).

■ The Court is not persuaded that Shalina has established the paternity of Harris by any of the standards articulated above. No court ever issued an order of filiation declaring Harris's paternity, and Harris never signed any kind of document acknowledging his paternity. Indeed, several years after Shalina's birth, Harris affirmed under penalty of criminal charges that he had no children.

Moreover, while Shalina offers evidence that demonstrates that she and Howell believed Harris to be Shalina's father, she submits nothing on the record to prove that Harris admitted to being her father. Indeed, two of the documents Shalina offers that purportedly prove Harris's paternity are signed only by Howell and were

prepared two years after Harris's death and several months after Shalina applied for the Benefits. As a result, the Court considers these documents to be self-serving conclusory allegations that fail to assist Shalina in building her case. Similarly, letters submitted by Howell's family and friends contending that Harris was Shalina's father do not constitute satisfactory evidence to prove Harris's paternity.

Harris also never submitted to any kind of genetic marker test during his lifetime, and New York courts have ruled that "an application to establish paternity may be made only where a blood genetic marker test had been administered to decedent *during his lifetime." Will of Janis*, 157 Misc.2d 999, 600 N.Y.S.2d 416, 418 (N.Y.Sur.1993), *aff'd*, 210 A.D.2d 101, 620 N.Y.S.2d 342 (App. Div. 1st Dep't 1994) (emphasis added). During the Hearing, Howell made reference to the possibility of exhuming Harris's body to recover genetic material for testing. (*See* Supp. Record at 25.) New York's Not–For–Profit Corporation Law permits exhumation upon the consent of the decedent's surviving spouse, adult children and parents and the corporation of the cemetery where the body is interred, and court intervention is necessary only where consent is not unanimous. *See* N.Y. Not–For–Profit Corp. Law § 1510(e) (McKinney 2003). There is no indication on the record that Shalina has made any efforts to secure the requisite consent for exhumation, that there is a reasonable likelihood that such consent would be granted if sought or that any application has been filed with a state court for an order to exhume Harris's body. Furthermore, the Court is not persuaded that Shalina would be able to offer "good and substantial reasons" for the disinterment, as required by the New York courts. *See Janis*, 600 N.Y.S.2d at 418–19 (discussing the showing needed for a non-marital child to demonstrate entitlement to exhume the body of the purported father).

### 2. *Criteria for Demonstrating Paternity under the Act*

The Act has established alternative criteria under which a non-marital child can qualify for child's insurance benefits even if the child does not meet the state's intestacy law requirements. Most of these alternatives mirror New York state's intestacy laws or involve facts not alleged by Shalina, and consequently none of them help Shalina in establishing her case.

First, Shalina does not allege that Howell and Harris ever engaged in or even contemplated a marriage ceremony, much less completed one that, but for a legal impediment, would have resulted in a valid marriage. Second, Shalina presents no evidence to demonstrate that Harris either acknowledged in writing that Shalina was his child, was ordered by a court to contribute to Shalina's support, or was decreed by a court to be the father of the child.

Finally, Shalina does not provide sufficient evidence to demonstrate Harris was contributing to her support. Shalina offers the Check as evidence, contending that it was given to Howell by Harris for Shalina's support, but the fact that Howell had the Check in her possession does not automatically prove that Harris provided it to her for Shalina's benefit or that Harris even gave the Check voluntarily to Howell. Shalina also does not allege that Harris ever lived with her. As a result, Shalina fails to meet any of the alternative criteria as described by the Act.

### III. *CONCLUSION AND ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the Commissioner's motion for judgment on the pleadings is GRANTED

The Clerk of Court is directed to close this case.

**SO ORDERED.**